STATE of Minnesota, Respondent,

v.

Al G. FROST, Jr., Appellant.

No. 81–422.

Supreme Court of Minnesota.

June 11, 1981.

Friedberg & Peterson, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., and Vernon E. Bergstrom, Chief, Appellate Section, Asst. County Atty., Minneapolis, for respondent.

SHERAN, Chief Justice.

This is an appeal from a number of concurrent sentences for convictions of five charges of theft by swindle over $150 committed by defendant before the Sentencing Guidelines became effective. The trial court, proceeding under the Guidelines even though technically not required to do so, departed from the presumptive sentence— which would have been to place defendant, who is a "first offender," on probation—and sentenced him to five concurrent 40-month prison terms. Defendant, who seeks a remand for resentencing, contends that in deciding to depart, the trial court erred in relying in part upon the factual basis underlying two charges of which defendant was acquitted in his trial. We affirm.

Defendant was appointed admissions and financial aid officer at Minneapolis Community College in July 1975. In January 1980 someone reported suspected irregularities in the financial aid program at M.C.C. to the legislative auditor, and the resultant investigation disclosed evidence of large-scale fraud ($104,463 in improper payments) in the program.

The investigation showed that several students received aid to which they were not entitled and then made kickbacks to people in the aid office. Other students were invited to apply for aid under fictitious names and they then kicked back a large part of the money they received. Forgery of the names of at least two real students was also involved.

Defendant was charged with seven separate felony complaints: (1) theft by swindle over $150; (2) theft by swindle over $150; (3) theft by swindle over $150 and aggravated forgery uttering; (4) theft by swindle over $150 and aggravated forgery uttering; (5) theft by swindle over $150 and misconduct by public employee; (6) theft by swindle over $2,500; and (7) theft by swindle over $2,500. At his trial on all these charges, defendant was found guilty of the first five complaints and not guilty of the last two.

At the sentencing hearing the prosecutor argued that the proper basis for departure was that this was a major economic crime. Specifically, section II.D.2.b. of the Guidelines provides that the fact that an offense was a major economic crime is an aggravating factor if two or more of the following circumstances were present:

(a) the offense involved multiple victims or multiple incidents per victim.

(b) the offense involved an attempted or actual monetary loss substantially greater than the usual offense or substantially greater than the minimum loss specified in the statute.

(c) the offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

(d) the defendant used his or her position or status to facilitate the commission of the offense, including positions of trust, confidence, or fiduciary relationships; or

(e) the defendant has been involved in other conduct similar to the current offense as evidenced by the findings of civil or administrative law proceedings or the imposition of professional sanctions.

The prosecutor, in seeking a sentence of 72 months in prison, argued that four of these factors—(a), (b), (c) and (d)—were present in this case. In arguing that there were multiple incidents, the prosecutor urged the court to consider the testimony underlying the charges of which defendant was acquitted because even though the state had not shown defendant's guilt of those charges beyond a reasonable doubt, it had shown defendant's involvement in those crimes by a preponderance of the evidence. In arguing that the monetary loss was substantial, the prosecutor pointed to the fact that at least $104,463 in losses were involved. In arguing that factor (c) was present, the prosecutor pointed to the evidence which the trial court had heard bearing on that, including evidence that defendant began the conduct shortly after he began his job. Finally, the prosecutor pointed to the fact that defendant used his position of trust to facilitate commission of the crime.

Defense counsel conceded that factors (c) and (d) were present but argued that factors (a) and (b), along with factor (e), were not present.

The trial court, in departing and sentencing defendant to 40 months in prison, stated that it believed aggravating factors were present and that a primary one was defendant's abuse of a position of trust. Most relevant to the matter, which is the subject of this appeal, are the following comments:

I am considering—and I'm stating for the record that I am considering—that without your complicity, the other thefts which have taken place and which have resulted in the three guilty pleas to date by Hill, White, and Allan—and which are resulting in other trials which are pending before this Court—that those thefts could not have taken place without the complicity of the chief financial aid officer of the college, which was you. That's different from saying that you are convicted of those offenses. You are not convicted of those offenses. You are convicted of five counts of Theft by Swindle

Over $150, a forgery count, a misconduct of a public official count, and one other that I guess I don't remember at the present time.

MR. FABER: I believe it's another forgery.

THE COURT: Two forgeries then.

But in any event, the overall picture tells me that most, if not all of it, could not possibly have gotten into the hands of the other individuals involved—Nate Shannon or Nate Allan, or Hill or White, or Hinkle—unless you had been in the position you were in.

And in addition to that, the jury found you guilty of several offenses, all of swindling the public out of the funds.

I understand, Mr. Friedberg, that the term, "Victim," usually refers to the direct object, if you will, of the perpetrator's conduct; but in this particular case I've already found, and I believe that several of the people who have pled guilty in other actions here, and who have felony counts on their record would not have had them had it not been for the availability of the funds from this financial aid office; and that was presided over directly by Mr. Frost.

Explaining the choice of a 40-month term, the court stated:

I want also for you to understand that if I had sentenced you, as I could have done, under the old law, the sentence would have been zero to ten years on each of the forgeries and zero to five years on each of the Theft by Swindle Over $150. It's my belief, Mr. Frost, from as much as I can determine, and I think pretty much as counsel can determine, that the actual time that you will serve on the sentence that I have just imposed—in other words, on the 40-month sentence—will actually be almost identical to what you would have served under the old sentence, because the parole board modified the number of years. I don't know whether you understand that, but I think what I am telling you is that, as I am thinking of this, I think you would do approximately the same amount of time regardless of how it is sentenced.

This appeal followed.

The state argues that a dismissal would be proper because a defendant cannot appeal a sentence for a crime committed before May 1, 1980, but the state suggests that we decide the matter at this time and save defendant the necessity of bringing the matter before this court by way of an appeal from judgment of conviction.

■ We agree that defendant cannot appeal from the sentence. However, as the state suggests, in the interests of justice we treat the appeal as one from judgment of conviction and address the issue raised by the appeal.

■ Defendant does not argue that his sentence was inequitable in comparison with that given some other defendant, but instead claims that the trial court improperly considered certain information in deciding what sentence to impose. This is the sort of contention which this court was free to consider on appeal even before the adoption of appellate review of sentences. The general principle governing such a contention is that the sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). However, the United States Supreme Court has sustained due-process objections to sentences imposed on the basis of "misinformation of constitutional magnitude." Id. at 447, 92 S.Ct. at 592. The *Tucker* case is an example of a case in which the Court sustained such an objection. There the Court remanded for resentencing after holding that it was improper for the sentencing judge to consider a prior uncounseled felony conviction in determining the defendant's sentence. *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), is an example of a case in which the Court ruled that no "misinformation of constitutional magnitude" was relied upon. There the Court held that the district court in that case properly considered the defendant's refusal to cooperate as a factor in imposing a

harsher sentence than he otherwise would have imposed.

Defendant tries to analogize his case to the case in which the trial court in sentencing relies on a prior uncounseled felony conviction. The analogy does not fit. What the trial court in this case said was that although it was aware defendant had been acquitted of two charges, that did not prevent it from going beyond the convictions which were obtained and looking at all the evidence implicating defendant, including evidence which was used in the unsuccessful prosecution of the two charges of which defendant was acquitted. Looking at all the evidence it was clear that, while the state had obtained only five convictions of theft by swindle over $150, defendant was the prime mover behind the entire scheme and that as a result of the scheme, losses of $100,000 were sustained and a number of people stood convicted of crimes they never would have committed but for defendant's abuse of his position of trust.

In conclusion, this is not a case in which the sentencing court relied upon "misinformation of constitutional magnitude."

Affirmed.