THE STATE OF OHIO, APPELLEE, *v.* WILES, APPELLANT.

[Cite as State *v.* Wiles (1991), 59 Ohio St. 3d 71.]

(No. 88-1265—Submitted October 16, 1990—Decided April 24, 1991.)

74

*David W. Norris,* prosecuting attorney, and *Robert A. Durst,* for appellee.

*Randall M. Dana,* Ohio public defender, *S. Adele Shank* and *Nathan A. Ray,* for appellant.

*Per Curiam.*

## I

In his second proposition of law, appellant argues in essence that the trial court erred by denying his motion to sever Count Three of the indictment (*i.e.,* the 1983 burglary charge) prior to trial. It is his essential contention that joinder of the 1983 burglary charge with the 1985 offenses was improper.

At the outset it must be observed that "[t]he law favors joining multiple offenses in a single trial under Crim. R. 8(A) if the offenses charged 'are of the same or similar character.' " See *State* v. *Lott* (1990), 51 Ohio St. 3d 160, 163, 555 N.E. 2d 293, 298, quoting *State* v. *Torres* (1981), 66 Ohio St. 2d 340, 343, 20 O.O. 3d 313, 314-315, 421 N.E. 2d 1288, 1290. Where a defendant claims that joinder was improper he must affirmatively show prejudice. *State* v. *Roberts* (1980), 62 Ohio St. 2d

170, 175, 16 O.O. 3d 201, 204, 405 N.E. 2d 247, 251.

Appellant maintains that there was insufficient evidence to support a conviction on Count Three of the indictment—a claim borne out by the subsequent dismissal of the charge by the three-judge panel at the conclusion of the state's case. It is appellant's further contention that the prosecution was aware of such deficiencies but employed Count Three as a vehicle for presenting to the court otherwise inadmissible evidence concerning the 1983 burglary.

In order to negate the claim that such joinder resulted in prejudice to appellant, the prosecution may demonstrate either (1) that evidence relative to the count subject to joinder would have been admissible in the trial of the remaining counts under the "other acts" portion of Evid. R. 404(B), or (2) that, irrespective of the admissibility of such evidence under Evid. R. 404(B), the evidence as to each count is "simple and direct." See *State* v. *Lott, supra*, at 163, 555 N.E. 2d at 298. The latter test focuses on whether the trier of fact is likely to consider "evidence of one [offense] as corroborative of the other * * *." *Dunaway* v. *United States* (C.A.D.C. 1953), 205 F. 2d 23, 27.

The evidence presented in the case *sub judice* clearly supports the conclusion that evidence relative to the 1983 burglary played no role in appellant's convictions on the 1985 offenses. It was undisputed that appellant burglarized the Klima home and killed Mark Klima in 1985. Instead, the defense challenged the state's contention that such acts were purposeful. Thus, any evidence relative to the 1983 burglary lacked any nexus with the critical issue in dispute relative to Counts One and Two.

Similarly, the particular evidence adduced at trial was separate and distinct regarding incidents two years apart. The state, in seeking to obtain a conviction on the 1983 burglary charge, relied on the testimony of two former associates of appellant, Lewis Ripley and Christopher Beans. These individuals testified as to statements made by appellant regarding events in 1982 and 1983. In contrast, the evidence adduced to support convictions for the 1985 burglary and homicide was composed, in large part, of confessions given to police by appellant wherein he denied the commission of any prior burglaries.

The conclusion that evidence relative to the 1983 burglary played no role in appellant's conviction for the 1985 crimes is underscored by the disposition made of Count Three by the three-judge panel. Inasmuch as the court dismissed Count Three while convicting on the remaining counts, such disposition "demonstrated its ability to segregate the proof on each charge." *State* v. *Brooks* (1989), 44 Ohio St. 3d 185, 195, 542 N.E. 2d 636, 645.

Appellant's second proposition of law is overruled.

## II

In his third proposition of law, appellant further contends that, while the 1983 burglary charge was dismissed by the three-judge panel, evidence relevant thereto was improperly considered in the sentencing determination. This argument must be rejected.

In discounting the mitigating effect of appellant's youth (twenty-two years of age), the trial panel observed from the bench as follows:

"* * * [T]he defendant, while relatively youthful, had been previously convicted of aggravated burglary, refused drug and alcohol treatment, displayed defiance of authority and

participated in other criminal activity for which he was not apprehended or convicted."

While it is certainly arguable that the last reference encompasses the 1983 burglary charge which was subsequently dismissed by the court, consideration of evidence relating to that charge at the sentencing stage does not constitute reversible error. In *United States* v. *Donelson* (C.A.D.C. 1982), 695 F. 2d 583, the federal appellate court observed as follows:

"* * * It is well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted. * * *" *Id.* at 590. See, also, *United States* v. *Sweig* (C.A.2, 1972), 454 F. 2d 181, 184; *United States* v. *Bernard* (C.A.4, 1985), 757 F. 2d 1439, 1444; *United States* v. *Funt* (C.A.11, 1990), 896 F. 2d 1288, 1300; *State* v. *Kelly* (1979), 122 Ariz. 495, 498-499, 595 P. 2d 1040, 1043-1044; *State* v. *Huey* (1986), 199 Conn. 121, 126, 505 A. 2d 1242, 1245; *State* v. *Frost* (Minn. 1981), 306 N.W. 2d 803, 805-806; 3 LaFave & Israel, Criminal Procedure (1984) 119, Section 25.1; Campbell, Law of Sentencing (1978) 286-287, Section 90.

Appellant's third proposition of law is overruled.

## III

In his fourth proposition of law, appellant contends that the trial court abused its discretion in permitting Keith Jirousek to testify despite the failure of the prosecution to disclose the identity of this witness in response to the discovery demand of the defense prior to the December 30, 1985 deadline prescribed by the court for completion of discovery.

Jirousek was a corrections officer for the Portage County Sheriff's Department. Over objection, he was permitted to testify regarding statements made by appellant during his period of confinement in the jail. These statements were made on December 10, 1985.

There is nothing in the record to indicate that the office of the prosecuting attorney was aware of these statements at the time of the pretrial conference (December 30, 1985) such as to suggest a willful violation of Crim. R. 16(B)(1)(e) and (D). Nevertheless, Jirousek was aware of these statements at the time they were made. Inasmuch as "[t]he police are a part of the state and its prosecutional machinery," *State* v. *Tomblin* (1981), 3 Ohio App. 3d 17, 18, 3 OBR 18, 20, 443 N.E. 2d 529, 531, such knowledge on the part of a law enforcement officer must be imputed to the state. *State* v. *Sandlin* (1983), 11 Ohio App. 3d 84, 89, 11 OBR 136, 141, 463 N.E. 2d 85, 90-91. Accordingly, the prosecuting attorney was not in compliance with the December 30 discovery order.

However, Crim. R. 16(E)(3) vests in the trial court the discretion to determine the appropriate response for failure of a party to disclose material subject to a valid discovery request. In *State* v. *Parson* (1983), 6 Ohio St. 3d 442, 445, 6 OBR 485, 487, 453 N.E. 2d 689, 691, this court observed that, under such circumstances, "the trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material. The court is not bound to exclude such material at trial although it may do so at its option." Reversible error exists only where the exercise of such authority by the trial court constitutes an abuse of discretion. *State* v. *Parson, supra,* at 445, 6 OBR at 487-488, 453 N.E. 2d at 691; *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 26, 514 N.E. 2d 394, 402.

In *Parson, supra,* a tripartite test was set forth to determine whether a trial court abused its discretion in admitting undisclosed discoverable evidence.

The syllabus to *Parson* provides as follows:

"Where, in a criminal trial, the prosecution fails to comply with Crim. R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim. R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim. R. 16(E)(3) by permitting such evidence to be admitted." See, also, *State* v. *Heinish* (1990), 50 Ohio St. 3d 231, 553 N.E. 2d 1026.

From a review of the record of the instant case, it is evident that appellant has failed to demonstrate that the violation of Crim. R. 16 by the state constitutes reversible error.

While the knowledge of Jirousek of the statements made by appellant is imputable to the prosecution for purposes of determining whether the rule was violated, such imputed knowledge is not sufficient to constitute a willful violation thereof. Instead, the acts of the prosecution itself must be evaluated. Appellant contends that willful violation of the rule on the part of the prosecuting attorney may be inferred from the statements of the chief assistant prosecutor who, appellant claims, admitted at trial that such nondisclosure was for "tactical considerations * * *." However, a close reading of the trial transcript reveals that the prosecution was referring to the decision to employ Jirousek as a witness for the state, not to a conscious attempt on its part to withhold discoverable material.

Moreover, the chief assistant prosecutor stated at trial that he had disclosed all information about which he was aware at the time of the pretrial conference. The trial court was apparently satisfied that the representation of the assistant prosecutor was worthy of belief. We have no reason to question this conclusion.

That the state did not willfully fail to disclose such information is further supported by the efforts taken by the prosecution once the existence of appellant's statements had become known to it. Supplemental discovery was undertaken by the prosecution by the hand delivery of the information to the defense once its existence became apparent. Despite the failure to submit the material by December 30, its delivery to the defense on January 2, 1986 reveals due diligence on the part of the prosecution and a total absence of any tactical advantage obtained by the state as a result of a three-day delay in its production. Even with the delay, the information was provided four days before trial and six days prior to Jirousek's testimony.

Second, it cannot be confidently stated that foreknowledge by the defense of the existence of the statements by December 30 would have benefited its case. It is the contention of appellant that foreknowledge would have permitted the defense to more adequately attack the credibility of such statements. However, a bald assertion to this effect is insufficient to demonstrate that the trial court committed reversible error.

Appellant nevertheless maintains that the late disclosure precluded preparation for such testimony and materially prejudiced his defense.

However, the only sanction urged of the trial court by appellant was the exclusion of Jirousek's testimony. Crim. R. 16(E)(3) provides as follows:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, *grant a continuance,* or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." (Emphasis added.)

In *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 42-43, 3 O.O. 3d 18, 24-25, 358 N.E. 2d 1051, 1059-1060, this court concluded that no prejudice to a criminal defendant results where an objection is made at trial to the admission of nondisclosed discoverable evidence on the basis of surprise but no motion for a continuance is advanced at that time. See, also, *State* v. *Weind* (1977), 50 Ohio St. 2d 224, 235, 4 O.O. 3d 413, 419, 364 N.E. 2d 224, 232; *State* v. *Howard* (1978), 56 Ohio St. 2d 328, 333, 10 O.O. 3d 448, 451, 383 N.E. 2d 912, 915-916. In the instant case, appellant sought the most stringent sanction available for violation of Crim. R. 16 even though a continuance would have remedied any harm resulting therefrom.

Since the record reveals that the violation of Crim. R. 16 was not willful, that there exists no demonstration that foreknowledge of the withheld information would have aided appellant's defense and that no prejudice resulted from its nondisclosure, the failure to exclude such testimony does not constitute reversible error. The fourth proposition of law advanced by appellant is therefore overruled.

### IV

Appellant contends in his fifth proposition of law that the testimony of Jirousek relative to statements made by appellant while in custody should have been excluded on the basis that they were "irrelevant and inflammatory."

Specifically, appellant maintains that his statements, as related by Jirousek, are too indefinite to be of any probative value. Evid. R. 401 is dispositive of this issue. It provides as follows:

" 'Relevant evidence' means evidence *having any tendency* to make the existence of *any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis added.)

The statements of appellant about which Jirousek testified clearly constitute "relevant evidence" as defined in Evid. R. 401. Such testimony need not be conclusive regarding a fact in question. Rather, such evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence * * * more probable * * * than it would be without the evidence."

Clearly, the role of appellant in the death of Mark Klima constitutes "a fact * * * of consequence to the determination of the action * * *." Without question, the determination of that issue is crucial to the outcome of the case.

Under such circumstances, it is apparent that the trial court did not abuse its discretion when it chose to admit the evidence. The testimony was undoubtedly probative of a fact in issue and cannot be considered inflammatory given its consideration in the context of a bench trial.

Appellant's fifth proposition of law is overruled.

### V

In his eighth proposition of law, appellant contends that the confes-

sions elicited from him were involuntary and, consequently, should have been suppressed. At the outset, it must be observed that, in order for a confession to be considered involuntary and thus violative of the Due Process Clause, it must have been the product of state action. See *Colorado* v. *Connelly* (1986), 479 U.S. 157, 165. In this regard, the *Connelly* court observed that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167.

Appellant cites two examples of allegedly coercive police activity. We turn first to his claim that the officers "badgered * * * [him] for 'the truth.' " We do not share the view of appellant that such conduct rises to the level of coercive activity. In *State* v. *Cooey* (1989), 46 Ohio St. 3d 20, 28, 544 N.E. 2d 895, 908, this court clearly stated that admonitions to tell the truth directed at a suspect by police officers are not coercive in nature.

Second, appellant claims that the coercive nature of the police conduct is reflected in Detective Kaley's false representation on August 7, 1985 regarding the extent to which the authorities were aware of his prior activities. Specifically, Detective Kaley remarked that "it's not crazy" to suspect appellant because appellant had been "out there [Shakespeare Acres] earlier this week" when Wiles denied having visited the farm. Kaley remarked, "[y]ou know the only way I could have obtained that information was from Mark [Klima] himself." Additionally, Kaley stated, "Mark told us that you had broken into there one time before, purposely, and you were let go * * *."

While the first of these statements is not technically false (the whereabouts of appellant were derived from remarks made by Mark Klima to his mother), both statements certainly implied that Mark spoke directly to the police. Such misrepresentations are sufficient to constitute state action.

It is therefore necessary to ascertain whether the confessions following these remarks were voluntary. A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker[.] * * *" *Culombe* v. *Connecticut* (1961), 367 U.S. 568, 602. In evaluating the voluntary nature of a confession, the court must consider the totality of the circumstances. *State* v. *Edwards, supra,* at 40, 3 O.O. 3d at 23, 358 N.E. 2d at 1059.

Appellant places great emphasis upon the misleading nature of the police statements suggesting that Mark Klima had implicated appellant in the commission of the crime. Clearly, appellant is correct that deception is "a factor bearing on voluntariness. * * *" *Schmidt* v. *Hewitt* (C.A.3, 1978), 573 F. 2d 794, 801. However, this factor, standing alone, is not dispositive of the issue. Yet, appellant identifies no other indication of coercion.

Rather, the circumstances surrounding the August 7, 1985 interview lead to an opposite conclusion. The interview was conducted outside the home of appellant, not in a police interrogation room. A transcript of the interview reveals that no threats or promises were communicated to appellant by Kaley in order to obtain his cooperation. Accordingly, the statements made by appellant to authorities on August 7 must be considered voluntary in nature.

On August 12, 1985, Officer Joe Johnson of the Savannah Police Department, responding to a call from appellant, arrested appellant and transported him to police headquarters where he was questioned by Detective

Brinson. While appellant initially denied commission of the murder, after breaking for lunch, he admitted it and gave a written statement. Later, appellant was questioned by Detectives Kaley and Doak. Appellant was questioned further by the detectives on the following day.

Each interrogation was preceded by *Miranda* warnings. Officer Johnson provided warnings to appellant at the time of arrest. Detectives Brinson, Kaley and Doak prefaced each interrogation session with warnings. The cumulative effect of such warnings belies any suggestion that the statements which followed were involuntary in nature.

Moreover, appellant cannot contend that he was "worn down by * * * lengthy questioning. * * *" *Fare* v. *Michael C.* (1979), 442 U.S. 707, 727. To the contrary, the session with Brinson began at 11:48 a.m., was interrupted for lunch, resumed thereafter, and was completed by 2:01 p.m. Seven hours elapsed before his interview with Kaley and Doak commenced. This interrogation began at 9:00 p.m., was suspended for a meal break at 10:14 p.m., resumed at 10:54 p.m. and continued until 10:59 p.m. From 11:15 to 11:30 p.m., appellant composed a written confession in his own handwriting. The following day, in the late afternoon, appellant was questioned by Kaley and Doak for a period of one hour, twenty-six minutes. Taken together, the total interrogation time for both days encompassed five hours, thirteen minutes and was interspersed with long and frequent pauses.

The initiative taken by appellant in surrendering to police suggests that his subsequent confessions were as voluntary as his decision to submit to police custody. The police were attentive to appellant's requests for food and drink and the questioning was not accompanied by threats or promises.

Appellant further argues that the absence of counsel supports his contention that his statements were involuntary in nature. While he makes no claim that his waiver of counsel was involuntary, appellant contends that the voluntariness of the waiver did not enhance his ability to resist coercive police interrogation. However, such waiver is indicative of his subjective belief that the presence of counsel was unnecessary.

Finally, appellant contends that a head injury suffered by him approximately a week before his interrogation in Savannah rendered him incapable of exercising his rights. However, there exists no evidence in the record suggesting that his volitional capacity was impaired.

Under the totality of the circumstances, we conclude that the statements made to police by appellant were voluntary in nature. Appellant's eighth proposition of law is overruled.

## VI

In his sixth proposition of law, appellant urges this court to disapprove the use of custodial police interrogations where a suspect has not actually consulted counsel prior thereto. Appellant further contends that this result should obtain even where the accused has voluntarily waived his constitutional rights and has chosen to speak to authorities. This rule is necessary, appellant maintains, because "*Miranda* has failed" to protect criminal defendants from coerced confessions.

This argument is without merit. It has been the consistent view of the United States Supreme Court that the Fifth Amendment protects one accused of a crime from being coerced into testifying against himself. In order to assure that any statements made by a criminal defendant are voluntary, *Miranda* v. *Arizona* (1966), 384 U.S.

436, requires that the accused be apprised of his rights prior to questioning. This court lacks the authority to interpret the Fifth Amendment more or less expansively than the United States Supreme Court.

However, appellant contends that Section 10, Article I of the Ohio Constitution affords protections independent of those embodied in the Fifth Amendment. Section 10, Article I provides that: "* * * No person shall be *compelled*, in any criminal case, to be a witness against himself * * *." Appellant cites no authority which supports his proposition that all inculpatory custodial statements are, by their very nature, compelled. Rather, the relevant provisions of the state and federal Constitutions require that such statements not be the product of coercion. These considerations are fully addressed in the course of determining whether the statements were voluntary in nature. (See discussion, *supra*.) Appellant's sixth proposition of law is overruled.

## VII

In his seventh proposition of law, appellant argues that his statements to Officer Joe Johnson of the Savannah police should have been suppressed. Officer Johnson was responding to a police dispatch occasioned by appellant's previous call to authorities. When Officer Johnson arrived at the location previously identified by appellant, appellant approached him and stated he wished "to turn * * * [himself] in." When Officer Johnson asked "[f]or what," appellant answered "[f]or murder." After further conversation, appellant stated he had killed Mark Klima at Klima's home in Ohio within the last week. Following submission of appellant's name and Social Security number to the dispatcher, it was determined that an outstanding warrant for his arrest existed. Appellant was thereafter arrested by Johnson and transported to police headquarters.

Under the holding in *Miranda* v. *Arizona, supra,* warnings apprising a criminal defendant of his constitutional rights must precede any custodial interrogation. However, such warnings are required only where both custody and interrogation coincide.

In the case at bar, the statements to Officer Johnson sought to be suppressed by appellant were not the product of a custodial interrogation. When Officer Johnson responded to the police dispatch generated by appellant's telephone call, it was appellant who approached Johnson. The conversation transpired on a public street, not in the confines of a police interrogation room. Formal arrest was not undertaken until after the information voluntarily conveyed by appellant could be independently verified. Accordingly, appellant was not in custody at the time the statements were made. The trial court did not err in refusing to suppress these statements.

Appellant further maintains that his statements of August 7, 1985 made to Detective Kaley should have been suppressed because there is no evidence that they were preceded by *Miranda* warnings, since part of the relevant portion of the tape recording had been accidentally erased. As an initial matter, this appears to be a misstatement of fact.

Detective Kaley testified that he had given appellant the warnings. This testimony is buttressed by a review of the transcript of the August 7 interview, which contains the warnings. Nevertheless, appellant contends that the inadvertent erasure of a portion of the warnings by the prosecutor should create a presumption that such warnings were not given. This argument must be rejected. The trial court, hav-

ing had the opportunity to evaluate firsthand the testimony of the witnesses, determined that such warnings were, in fact, given. Moreover, appellant was not in custody when the conversation took place. Accordingly, no such warnings were required. Appellant's seventh proposition of law is therefore overruled.

## VIII

In his seventeenth proposition of law, appellant contends that the trial court should have merged the two aggravating circumstances prior to weighing them against the mitigating factors. Appellant was convicted of one aggravating circumstance under R.C. 2929.04(A)(3) (murder to escape accountability for a crime) and another under R.C. 2929.04(A)(7) (murder during aggravated burglary). Both specifications were predicated upon the same aggravated burglary and thus "arose from the same acts and were committed with the same animus." *State* v. *Cooey, supra,* at 39, 544 N.E. 2d at 917. See, also, *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 197-198, 15 OBR 311, 340, 473 N.E. 2d 264, 295. As conceded by the state, these specifications should have been merged.

However, in *Jenkins, supra,* at 198-200, 15 OBR at 340-342, 473 N.E. 2d at 295-297, this court determined that the failure of the trial court to merge the specifications does not require that the sentence be set aside. Rather, a reviewing court may merge the duplicative aggravating circumstances in the course of conducting its independent weighing of aggravating and mitigating circumstances pursuant to R.C. 2929.05(A). Through this process, any error existing below would be remedied. In the case at bar, such merger was undertaken by the Eleventh District Court of Appeals below.

Accordingly, appellant's seventeenth proposition of law is hereby overruled.

## IX

In his ninth proposition of law, appellant maintains that there exists insufficient evidence to support his conviction for aggravated murder and one of the death specifications. Any evaluation of this proposition of law must ascertain whether reasonable minds could find that all material elements of the offense and specification were proved beyond a reasonable doubt. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184; *Jackson* v. *Virginia* (1979), 443 U.S. 307.

In support of his initial contention, appellant states that a conviction for aggravated murder under R.C. 2903.01(A) requires proof beyond a reasonable doubt that the accused "purposely * * * cause[d] the death of another." In this regard, appellant maintains that the state has failed to prove "purpose." A "purposeful act" is defined by R.C. 2901.22(A) as follows:

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

Appellant argues that the state has failed to prove that he purposely killed Mark Klima. He points to three factors which illustrate that purpose was not proven at trial: (1) he waited until he thought everyone had left the Klima house before he entered; (2) he locked the doors behind him to prevent anyone from entering while he was in the house; and (3) there is no evidence that he possessed a weapon when he entered the residence.

However, there exists sufficient evidence from which the trier of fact could conclude that appellant acted in a purposeful manner. Appellant stabbed his victim at least ten times. Seven stab wounds were found in his chest and back. A rational factfinder could conclude from the number and location of these wounds that Wiles had a "purpose" to cause the death of Mark Klima.

Appellant also contends that the state has failed to prove that he killed Mark Klima "for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender." R.C. 2929.04(A)(3).

It is undoubtedly correct, as appellant suggests, that R.C. 2929.04 (A)(3) "[does not permit] an inference that *every* intended killing which follows another crime allows the death penalty to be imposed." (Emphasis *sic.*) *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 103-104, 512 N.E. 2d 598, 607. He contends, moreover, that there exists a dearth of evidence that he committed the offense for any of the purposes enumerated in the statute.

Clearly, R.C. 2929.04(A)(3) envisions conviction thereunder where it is proven that the accused committed aggravated murder to avoid "detection." We have previously held "that 'detection' anticipates a situation where the witness or witnesses are killed in an attempt to hide the commission of the crime." *State* v. *Jester* (1987), 32 Ohio St. 3d 147, 148-149, 512 N.E. 2d 962, 965. Thus, in *Jester, supra,* this court alluded to the facts in *Stumpf, supra,* to illustrate a situation where the specification had been proven beyond a reasonable doubt:

"* * * [I]n *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, the defendant had shot the husband. Believing that he had killed the husband,

Stumpf then killed the wife, the only witness besides defendant and his co-defendant, to avoid detection." *Jester, supra,* at 149, 512 N.E. 2d at 965.

In contrast, the facts in *Jester* were insufficient to establish the specification "* * * because the shooting occurred in a crowded bank, [and] it is not possible to find that he was seeking to avoid detection." *Id.* at 148, 512 N.E. 2d at 965. Thus, no inference arises that a criminal defendant seeks to escape detection under circumstances where one of many potential witnesses is slain. However, where the accused attempts to kill the only witness to his commission of a crime, there exists sufficient circumstantial evidence that the act was undertaken for the purpose of avoiding detection. See *State* v. *Stumpf, supra.*

In the case *sub judice,* Mark Klima was the sole witness to the burglary of the Klima residence. A rational trier of fact could conclude from this evidence that appellant killed Mark Klima for the purpose of escaping detection for the crime.

Appellant's ninth proposition of law is therefore overruled.

## X

In his tenth proposition of law, appellant contends that the testimony of Carol Klima relative to her prior conversation with her son was inadmissible hearsay. Carol Klima testified regarding the presence of appellant on her property on August 5, 1985, two days before the murder. Her testimony on this point consisted of the following:

"He talked to my son. He asked my son if he recognized him. My son said, 'Yes, you're Mark Wiles.' And Mark Wiles told my son that he had amnesia and that he wanted to talk to me, and my son told him that I was up at the house and Mark Wiles started to walk towards the house and the dog

started barking and he turned around and left."

The aforementioned testimony was introduced by the state for the purpose of establishing that Mark Klima was capable of identifying appellant to the authorities. Such evidence would also tend to demonstrate that appellant was guilty of the specification under R.C. 2929.04(A)(3) inasmuch as the killing of Mark Klima would enable appellant to escape detection, apprehension, trial or punishment for another offense.

Despite the relevancy of such evidence, appellant contends that the testimony constitutes inadmissible hearsay. The state essentially concedes that Carol Klima's recollection of the conversation with her son was offered to prove the truth of the matter asserted. It was therefore the intent of the prosecution to establish that appellant knew that Mark Klima could identify him. The statement is clearly hearsay within the meaning of Evid. R. 801(C) and does not satisfy the requirements for admissible hearsay under Evid. R. 803 or 804. Accordingly, it was inadmissible under the Rules of Evidence.

However, no objection to such testimony was interposed at trial. Appellant also failed to raise this issue before the court of appeals. Trial error not preserved by objection may be considered on appeal only if it constitutes plain error. The plain error test requires that, but for the existence of the error, the result of the trial would have been otherwise. *State* v. *Long* (1978), 53 Ohio St. 2d 91, 97, 7 O.O. 3d 178, 181, 372 N.E. 2d 804, 808.

Assuming *arguendo* that the failure to exclude such testimony would have constituted reversible error if an objection thereto had been made, there exists sufficient evidence apart from the statements of Carol Klima to support the verdict with regard to the specification. (See Part IX, *supra*.) It cannot be said with any degree of confidence that appellant would have been acquitted of the specification but for the hearsay testimony. Accordingly, appellant's tenth proposition of law is overruled.

## XI

In his twelfth proposition of law, appellant argues that the state introduced improper evidence and engaged in inflammatory argument during the guilt phase of the trial. The evidence in question involved the testimony of Carol Klima, who described her son as "a wonderful boy" with a quiet disposition. She further discussed Mark's hobbies and grades in school. Moreover, the prosecuting attorney described the deceased in closing argument as follows: "A boy, a son that every parent would dream about having. A four-point student and an accomplished writer. A shy and quiet boy * * * who liked computers, who hated violence." The prosecution also evoked the suffering of Charles and Carol Klima: "And the worst repayment of all was the mutilation and the snatching away of the life of their only child."

Appellant correctly contends that this evidence and argument constituted an irrelevant appeal to the emotions. However, in reviewing a bench trial, an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict. The presumption may be overcome only by an affirmative showing to the contrary by the appellant. *State* v. *Post* (1987), 32 Ohio St. 3d 380, 384, 513 N.E. 2d 754, 759. Appellant has failed to identify anything in the record which would suggest that the trial court considered anything but competent, credible evidence in arriving at the verdict.

Similarly, there is no indication from the trial court opinion to support the view that the personal qualities of the deceased or the grief suffered by his parents was considered in fixing sentence. See *Booth* v. *Maryland* (1987), 482 U.S. 496.

Appellant further objects to the characterization of him by the prosecutor as "an ogre * * *, a man-eating monster, a hideous, brutish person * * *" and "an animal." Such invective is highly unprofessional. See DeFoor, Prosecutional Misconduct in Closing Argument (1983), 7 Nova L. J. 443, 465. However, the prosecution is entitled to some latitude in summation. *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 26, 35 O.O. 2d 8, 14, 215 N.E. 2d 568, 578. "* * * Strong characterizations such as 'beast,' 'cruel human vulture,' and 'vile creature' have been allowed where there is support for them in the record. * * *" DeFoor, *supra*, at 464-465.

The language of the prosecuting attorney, while strong, is amply supported by the record. Mark Klima was stabbed at least ten times, mostly in the back, and sustained a total of twenty-four wounds. Moreover, no objection was interposed relative to the characterizations. Finally, such remarks were directed to a three-judge panel, which is presumed to have considered only relevant evidence in arriving at its decision. *State* v. *Post, supra*. Thus, there exists no basis for concluding that such remarks deprived appellant of a fair trial.

Appellant also challenges the reference made by the prosecution that he lied to the police on various occasions, including when he told police that the deceased had attacked him. He contends that his veracity was irrelevant to the issue of guilt or innocence. However, appellant had maintained as a crucial aspect of his defense that the homicide was not purposeful because he had killed in a moment of panic after he was attacked with a knife by Mark Klima. Inasmuch as appellant was the only surviving witness to the fatal encounter, it was clearly permissible for the state to argue that appellant's version of events was unworthy of belief because he had lied on other occasions. See *State* v. *Landrum* (1990), 53 Ohio St. 3d 107, 110, 559 N.E. 2d 710, 717.

The prosecution also argued that appellant had failed to "show concern" about the crime because of his threat to "kill again." Appellant takes issue with these statements because he contends that they focus on "future dangerousness" and are thus irrelevant to the issue of guilt. However, the prosecution's argument sought not to establish appellant's future dangerousness but rather his total lack of remorse shortly after the commission of the crime. While under most circumstances such argument would be equally irrelevant to guilt or innocence, the subjective mental state of appellant during the period following the crime became an issue during the guilt phase of the trial as a result of the strategy employed by the defense. The defense had emphasized both on cross-examination and in closing argument that appellant had cooperated with police and had shown deep remorse "to the point that he even contemplated taking his own life * * *." Such argument as was advanced by the state merely sought to rebut the defense contentions.

Appellant also objects to references by the prosecution regarding the youth of the victim. However, such argument is clearly relevant to answer the claim of appellant that he was attacked by Mark Klima. While it is certainly true that persons fifteen years of age have been known to commit homicide, the prosecution was certain-

ly free to argue that it is much more likely that a twenty-two-year-old burglar would attack a fifteen-year-old boy than for the opposite to occur.

Appellant's twelfth proposition of law is overruled.

## XII

In his fourteenth proposition of law, appellant challenges the use of inflammatory arguments by the prosecution during the penalty phase of the trial. Of particular significance is the contention of appellant that the prosecutor commented disparagingly about the exercise of his constitutional rights.

In attempting to refute appellant's claim that he cooperated with police, the prosecutor remarked: "Did he cooperate with Duane Kaley when he went over to talk to him the afternoon of August Seventh? * * * He wouldn't give him a consent to search the car."

Appellant correctly notes that "courts disapprove of penalties imposed for exercising constitutional rights." *State* v. *Landrum, supra,* at 110, 553 N.E. 2d at 716. Prosecutorial comment that "cuts down on" a constitutional right "by making its assertion costly" is forbidden. *Griffin* v. *California* (1965), 380 U.S. 609, 614.

Appellant clearly had a right to withhold consent to a warrantless police search of his car. The comment by the prosecution sought to penalize the assertion of this right. Just as prosecutors are barred from commenting upon the assertion by a criminal defendant of his Fifth Amendment right against self-incrimination, *Griffin, supra,* or upon his plea of not guilty, *Landrum, supra,* they may not comment on his exercise of his Fourth Amendment right against unreasonable searches. See *United States* v. *Thame* (C.A.3, 1988), 846 F. 2d 200, 205-207; *United States* v. *Taxe* (C.A.9, 1976), 540 F. 2d 961, 969.

Nevertheless, the defense did not object to the comment by the prosecutor. This deficiency waives any claim of error except plain error under Crim. R. 52(B). As observed earlier, however, an error will not be found to be plain error where it is not outcome determinative. (See Part X, *supra.*) Given the presentation of such argument in the context of a bench trial, it must be presumed that the court disregarded an appeal by the prosecutor premised upon the assertion by appellant of his constitutional rights.

Appellant also objects that the prosecution commented on his refusal to testify on his own behalf. Remarks of this nature, if they occurred, would be clearly inappropriate. *Griffin* v. *California, supra.* However, no such comments were made by the prosecution. Rather the prosecutor said, "Mark *Klima* is also a witness, but he's not talking to you from his mouth, he's talking to you through the puncture wounds in his back and in his chest." (Emphasis added.) This does not constitute comment upon appellant's refusal to testify.

Appellant also challenges the relevancy of comments by the prosecution relative to the character of the victim. The prosecutor described Mark Klima as a "quiet," "peaceful and nonviolent" person who "backed away from fights." However, such remarks were a valid attempt to refute the characterization of Mark Klima by appellant as the aggressor.

Appellant further objects to the reference of the prosecutor to the suffering inflicted upon the victim. However, we have previously held that absent plain error, such comment does not constitute reversible error. *State* v. *Cooey, supra,* at 36, 544 N.E. 2d at 915.

Appellant additionally cites comments made by the prosecutor about his character, which appellant argues

were irrelevant and prejudicial. In particular, the prosecution remarked: "If you look at his history, his character and background, he's a drugger, a doper." The prosecutor also alluded to appellant's affair with his cousin's wife. While such remarks border on irrelevancy, the Supreme Court has approved "open and far-ranging argument * * *" and observed that "[s]o long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. * * *" *Gregg* v. *Georgia* (1976), 428 U.S. 153, 203-204 (plurality opinion).

Appellant argues that the prosecution improperly referred to his alleged future dangerousness. In *State* v. *Beuke* (1988), 38 Ohio St. 3d 29, 33, 526 N.E. 2d 274, 280, this court specifically permitted such comment by the prosecution. Appellant further maintains that future dangerousness may not be considered because it is not a statutory aggravating circumstance, citing *Jurek* v. *Texas* (1976), 428 U.S. 262. However, *Jurek* merely concluded that states may constitutionally designate future dangerousness as a statutory aggravating circumstance. *Id.* at 274-276. As mentioned previously, however, evidence of appellant's future dangerousness was not admitted for the purpose of establishing a non-statutory aggravating circumstance but to refute his contention during both the guilt and penalty phases of the trial that he experienced remorse over the killing of Mark Klima.

During the course of closing argument at the mitigation hearing, the prosecution repeatedly referred to the emotional impact of Mark Klima's death on his parents. While such references are constitutionally impermissible, *Booth* v. *Maryland, supra,* there is no affirmative showing by appellant that they were considered by the trial court in imposing sentence, *State* v. *Post, supra.*

Appellant also objects to remarks made by the prosecutor relative to offenses for which appellant had not been charged or convicted. He therefore contends that such comment violated the presumption of innocence. However, such presumption does not obtain in sentencing proceedings. Consequently, no statutory or constitutional infirmity exists. See *State* v. *Hutton* (1990), 53 Ohio St. 3d 36, 42-43, 559 N.E. 2d 432, 441; *State* v. *Cooey, supra,* at 35, 544 N.E. 2d at 914.

Appellant also challenges the argument of the prosecutor that appellant left the scene of the crime with the money he had stolen, rather than obtaining medical assistance for the victim. This argument, appellant contends, is "irrelevant and ridiculous * * *." However, such remarks were intended to refute appellant's claim that the killing of Mark Klima was unintentional. Clearly, a question arises regarding such protestations by appellant when no attempt was made to seek help for an "unintended victim."

Appellant's fourteenth proposition of law is overruled.

## XIII

In his fifteenth proposition of law, appellant contends that the trial court improperly considered nonstatutory aggravating circumstances in imposing sentence. This argument is without merit.

The trial court specifically and correctly identified the aggravating circumstances in its opinion. It further stated ten reasons why the aggravating circumstances outweighed the mitigating factors. Appellant, however, characterizes these reasons as nonstatutory aggravating circumstances.

R.C. 2929.03(F) requires that a

trial court state the reasons for its finding that the aggravating circumstances outweigh the mitigating factors. Moreover, in *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, this court held at paragraph one of the syllabus, that the "trial court * * * may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors."

Accordingly, where the court below correctly identifies the statutory aggravating circumstances pleaded and proven at trial, this court will infer that the trial court "understood the difference between statutory aggravating circumstances and facts describing the nature and circumstances of the offense." *State* v. *Sowell* (1988), 39 Ohio St. 3d 322, 328, 530 N.E. 2d 1294, 1302. Clearly, such inference is appropriate in the case at bar. Appellant's fifteenth proposition of law is overruled.

### XIV

Appellant claims in his sixteenth proposition of law that the trial court failed to consider relevant mitigating factors adduced by him at the sentencing hearing. The trial court determined that appellant had established two mitigating factors: his youth and his "mostly truthful and sincere" confessions. However, appellant contends that the trial court did not consider his deep remorse over the killing or the fact that the murder would not have been solved without his surrender to authorities and his subsequent confessions. This argument mischaracterizes the trial court decision. The court specifically mentioned that it had considered "[e]vidence of remorse" and "cooperation of the defendant with law enforcement officials and confessions."

Moreover, appellant's contention that the trial court failed to take into account his history of drug and alcohol abuse is inaccurate. A review of the trial court opinion contradicts this assertion. Appellant further maintains that the trial court ignored mitigating evidence relative to his active involvement in church activities. This contention is also contradicted by the language of the trial court opinion. We similarly reject appellant's contentions that the trial court failed to consider the results of his psychological evaluation, his generally favorable record during a prior incarceration, his troubled family history, his history of nonviolence, or his efforts to avoid a confrontation during the burglary. The trial court opinion reveals that such evidence was in fact considered.

Appellant also maintains that the trial court failed to give due regard to his lack of a significant history of prior convictions as required by R.C. 2929.04(B)(5). However, the court merely concluded that the factor did not exist because it viewed appellant's prior burglary conviction as significant.

Appellant likewise contends that the trial court did not consider that the victim induced the stabbing by attacking him and thus ignored mitigating circumstances to which it is required to accord weight pursuant to R.C. 2929.04(B)(1). A more plausible reading of the trial court decision yields the conclusion that the court simply did not believe appellant's version of his encounter with Mark Klima. Accordingly, it was the determination of the trial court that the statutory mitigating factor did not exist.

Assuming *arguendo* that such mitigating factors should have been more explicitly addressed by the trial court, any deficiency inherent therein can be cured by an independent reweighing of the factors by this court.

See *State* v. *Lott, supra*, at 171-173, 555 N.E. 2d at 305-307. Appellant's sixteenth proposition of law is overruled.

## XV

In his twenty-third proposition of law, appellant contends that the trial court failed to adequately explain why the aggravating circumstances were sufficient to outweigh the mitigating factors. While appellant concedes that the trial court listed ten reasons why the aggravating circumstances prevailed, he nevertheless argues that the listings did not constitute a meaningful weighing.

R.C. 2929.03(F) requires a trial court to "state * * * the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors * * *." This function was fully performed by the trial court in the case at bar. Appellant's twenty-third proposition of law is overruled.

## XVI

In his twenty-fifth proposition of law, appellant urges that the court of appeals improperly considered the circumstances of the offense as nonstatutory aggravating circumstances. However, a review of the court of appeals' opinion reveals that the appellate court correctly identified the aggravating circumstance upon which its decision was predicated.

Appellant further contends that the appellate court failed to give sufficient weight to several of the mitigating factors which he presented at trial. However, the court is under no obligation to assign any particular weight to mitigating factors advanced by the defendant. See *State* v. *Cooey, supra*, at 39-40, 544 N.E. 2d at 918. Appellant's twenty-fifth proposition of law is overruled.

## XVII

In his twenty-eighth proposition of law, appellant objects to the admission of numerous gruesome autopsy photographs of the victim. The photographs are clearly gruesome and repetitive. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768, paragraph seven of the syllabus. However, appellant failed to object to the admission of such exhibits at trial.

Moreover, the probative value of such evidence is beyond question. The photographs reveal the number and location of the stab wounds and are thus relevant to the issue of intent. Accordingly, their admission cannot be considered plain error. Appellant's twenty-eighth proposition of law is overruled.

## XVIII

In his eleventh proposition of law, appellant maintains that the trial court should have provided for a stenographic record of its visit to the Klima residence to view the murder scene. However, appellant neither requested that a record be made at the time nor attempted to employ App. R. 9(C) or 9(E) "to reconstruct what was said or to establish its importance." *State* v. *Brewer* (1990), 48 Ohio St. 3d 50, 61, 549 N.E. 2d 491, 502.

Accordingly, any alleged error in failing to record the event has been waived for purposes of appellate review. Appellant's eleventh proposition of law is overruled.

## XIX

In his twenty-seventh proposition of law, appellant contends that the indictment is invalid because it does not bear the signature of the grand jury foreman.

During the course of these proceedings, the portion of the indictment originally transmitted to this court containing the foreman's signature

was misplaced. This missing page has since been located.

In the meantime, to remedy this apparent deficiency, the state was permitted to supplement the record by supplying a certified copy of the indictment. See 47 Ohio St. 3d 702, 547 N.E. 2d 988.

We are unable to determine when this page containing the signature became detached and misplaced. However, regardless of when the detachment occurred, we cannot agree that this apparent irregularity warrants reversal. If the signature was properly attached prior to trial, then the indictment did not lack a signature and no defect existed. If the signature page was misplaced before trial, appellant has failed to preserve any error by timely objection. Appellant may not withhold a timely objection at trial in the hopes of obtaining a favorable outcome on the merits and attempt to raise the error on review when the desired result fails to materialize. See *Wainwright* v. *Sykes* (1977), 433 U.S. 72, 89-90. Appellant's twenty-seventh proposition of law is overruled.

## XX

In his twenty-second proposition of law, appellant contends that the mitigating factors set forth in R.C. 2929.04(B) are unconstitutionally vague because they "fail to adequately inform the trier of fact what may and may not be considered in mitigation."

However, in *Eddings* v. *Oklahoma* (1982), 455 U.S. 104, 113-114, the United States Supreme Court held that "the State may not by statute preclude the sentencer from considering any mitigating factor * * *." Although irrelevant evidence may be excluded, *Lockett* v. *Ohio* (1978), 438 U.S. 586, 604, fn. 12, any attempt to restrict what may be considered in mitigation would be violative of the Eighth and Fourteenth Amendments to the United States Constitution.

While appellant cites *Maynard* v. *Cartwright* (1988), 486 U.S. 356, for the proposition that "sentencing guidelines" must be specific, the decision addressed an unconstitutionally vague aggravating circumstance, not a mitigating factor. Rather, any attempt to limit consideration of any *mitigating* factor on the basis of vagueness would run afoul of the constitutional imperatives recognized in *Eddings* v. *Oklahoma, supra*. Appellant's twenty-second proposition of law is overruled.

## XXI

In his first proposition of law, appellant contends that R.C. 2929.04 (A)(7) (the felony-murder aggravating circumstance) essentially replicates the elements of R.C. 2903.01(B) (the offense of aggravated murder) and is therefore unconstitutional. This argument was considered and rejected in *State* v. *Henderson* (1988), 39 Ohio St. 3d 24, 528 N.E. 2d 1237, paragraph one of the syllabus.

Appellant further argues that R.C. 2929.04(A)(7) is unconstitutionally vague because it does not define "principal offender." We do not consider this term to be vague. In *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 371, 513 N.E. 2d 744, 746, we held that "principal offender" denotes "the actual killer." Appellant's first proposition of law is overruled.

## XXII

In his thirteenth proposition of law, appellant urges this court to require that any convictions of a capital offense and any determination that death should be imposed be proven beyond all doubt. This proposition of law is overruled on authority of *State* v. *Jenkins, supra*, paragraph eight of the syllabus, and *State* v. *Williams*

(1986), 23 Ohio St. 3d 16, 22, 23 OBR 13, 19, 490 N.E. 2d 906, 913.

## XXIII

In his eighteenth and twenty-sixth proposition of law, appellant argues that any proportionality review undertaken pursuant to R.C. 2929.05(A) must include consideration of cases where the death penalty was available but not imposed. This proposition of law is overruled on authority of *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 31 OBR 273, 509 N.E. 2d 383, paragraph one of the syllabus.

## XXIV

In his twenty-fourth proposition of law, appellant contends that the Ohio statutory framework for imposition of the death penalty is violative of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution. These arguments were considered and rejected by this court in *State* v. *Jenkins, supra*, at 167-179, 15 OBR at 314-324, 473 N.E. 2d at 272-280. Appellant's twenty-fourth proposition of law is not well-taken.

## XXV

In his twenty-ninth proposition of law, appellant contends that the errors previously alleged were cumulatively prejudicial and denied him a fair trial. However, we conclude that appellant's prior propositions either "fail to establish errors" or allege errors which are "not outcome determinative." *State* v. *Moreland* (1990), 50 Ohio St. 3d 58, 69, 552 N.E. 2d 894, 905. Appellant's twenty-ninth proposition of law is overruled.

## XXVI

In his nineteenth, twentieth and twenty-first propositions of law, appellant contends that the independent review required of this court pursuant to R.C. 2929.05(A) must yield the conclusion that the aggravating circumstance does not outweigh the mitigating factors beyond a reasonable doubt and that imposition of the death sentence herein would be disproportionate to the sentences rendered in similar cases.

Appellant was convicted of two aggravating circumstances pursuant to R.C. 2929.04(A)(3) (murder to escape detection, apprehension, trial or punishment for another offense) and R.C. 2929.04(A)(7) (felony murder). The court of appeals correctly concluded that these two specifications should have been merged for purposes of sentencing. See Part VIII, *supra*. Accordingly, there exists one aggravating circumstance. Several mitigating factors are advanced by appellant to overcome the aggravating circumstance.

As an initial matter, appellant claims that he exhibited remorse for the murder, surrendered to authorities and confessed to the crime. Without such confessions, appellant contends that the crime would never have been solved. Although "retrospective remorse is to be accorded little weight in mitigation * * *[,]" *State* v. *Post, supra*, at 394, 513 N.E. 2d at 768, remorse which leads to surrender and confession is a more impressive factor. *State* v. *Hicks* (1989), 43 Ohio St. 3d 72, 80, 538 N.E. 2d 1030, 1039.

Nevertheless, the remorse exhibited by appellant is offset to some degree by his other attempts to avoid responsibility. His cooperation was neither total nor immediate. When Detective Kaley visited his residence on August 7, 1985, the initial reaction of appellant was to ask his roommate to lie to the police so he could escape out the side door. In his subsequent conversation with Detective Kaley, ap-

pellant denied any participation in the crime. When Detective Kaley left, appellant fled the state. Despite his surrender to Georgia police authorities five days later, he initially represented to Detective Brinson that he did not commit the murder.

Appellant also claims in mitigation that he tried to avoid any confrontation with Mark Klima. In support of this contention, appellant states that he did not enter the house until he was convinced that the occupants (including Mark Klima) had left, he carried no weapon into the house with him and he locked the door behind him. Certainly, these facts are entitled to some weight in mitigation.

Appellant also argues that Mark Klima approached him from behind with a knife and that the confrontation resulted in a panic-induced killing. However, other evidence tends to contradict appellant's characterization of his confrontation with Mark Klima. Of the ten or eleven stab wounds suffered by the victim, five were in the back. There is no evidence of a struggle in the living room. Moreover, it is highly improbable that a slightly built fifteen-year-old boy of peaceful disposition armed himself with a knife and attacked an older, stronger burglar.

Appellant further urges in mitigation that he was only twenty-two years of age when the crime was committed. While youth is clearly a mitigating factor under R.C. 2929.04(B)(4), it has not been afforded great weight by this court. See *State* v. *Powell* (1990), 49 Ohio St. 3d 255, 263, 552 N.E. 2d 191, 200 (nineteen-year-old defendant); *State* v. *Benner* (1988), 40 Ohio St. 3d 301, 319, 533 N.E. 2d 701, 719 (defendant was twenty-two and twenty-three at the time the murders were committed).

Appellant also presented evidence of his redeeming personality traits. A family friend testified that appellant had been a quiet, sincere boy who had participated in church activities. His former minister, his mother and a second family friend testified that appellant does not have a violent nature. Consequently, appellant argues that his murder of Mark Klima was an aberration. Moreover, appellant's former supervisor at Mansfield State Reformatory testified that appellant was polite, quiet and caused no problems.

In contrast, appellant's former high school unit principal testified that appellant was prone to displays of anger and verbal abuse. Appellant was described by this witness as one of the most "belligerent individuals" he had met in his career. Other testimony also suggested that appellant was capable of acts of violence. Kathy Kelley testified that appellant, speaking about a previous burglary, had told her "that he was glad that he didn't have to hurt anybody in that burglary because he didn't know what he would have done if somebody had seen him * * *."

Testimony was also presented regarding his allegedly kind nature. Susan Hodge, a friend of the Wiles family, stated that appellant was "very good to my children." She remarked that appellant had once offered to buy her son braces to correct his harelip and cleft palate.

Evidence was submitted with respect to appellant's childhood. A psychologist testified that appellant's emotional development had been arrested between the ages of ten and twelve and that he has "an overabundance of conscience * * *." Appellant had a poor relationship with his father, who was not close to him and gave him little positive reinforcement. Appellant was also extremely close with his older brother Randy, who died when appellant was in the tenth grade.

While appellant had a history of drug and alcohol abuse, the record does not indicate that it contributed to

the commission of the crime in question. Moreover, he was not under the influence of drugs or alcohol at the time he committed the crime, nor was the burglary undertaken to support a drug habit.

Appellant also contends that he lacked a significant history of prior convictions or delinquency adjudications. See R.C. 2929.04(B)(5). However, appellant did have a previous conviction for aggravated burglary. Inasmuch as that crime involved the same type of activity which forms the basis of the aggravating circumstance in the case *sub judice*, the conviction cannot be considered insignificant.

Appellant contends that he maintained an excellent disciplinary record at the Mansfield Reformatory. Appellant's prison records show that he was disciplined three times in fifteen months. However, on one of these occasions, when appellant disobeyed the demand of a guard, compliance therewith would have constituted a violation of the orders of his supervisor. None of the infractions involved drugs, alcohol or violence. While describing such a record as "excellent" is an exaggeration, it is entitled to some weight in mitigation.

Thus, appellant has clearly adduced a modicum of mitigating evidence. However, the extreme violence employed in the commission of the crime and its perpetration in the home of the victim lead us to conclude that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt. Appellant's nineteenth, twentieth and twenty-first propositions of law are therefore overruled.

### XXVII

In his twenty-sixth proposition of law, appellant contends that imposition of the death penalty in the instant case is disproportionate to sentences given in similar cases.

In determining, pursuant to R.C. 2929.05(A), whether the sentence imposed is disproportionate or excessive, this court must review the disposition of other capital cases reviewed by us where the criminal act involved similar circumstances. Several decisions by this court have approved the death sentence for persons who have committed aggravated murder in the course of aggravated burglary. See *State* v. *Henderson, supra; State* v. *Holloway* (1988), 38 Ohio St. 3d 239, 527 N.E. 2d 831; *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 514 N.E. 2d 394; *State* v. *Steffen, supra*; and *State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922.

Appellant contends, however, that all of the preceding cases involved other specifications in addition to aggravated burglary. Inasmuch as the two specifications charged in the case at bar must be merged, the aggravated burglary specification constitutes the only aggravating circumstance. However, since the filing of appellant's brief, this court has decided *State* v. *Landrum, supra*.

Despite the presence in *Landrum* of only one aggravating circumstance, the same one present herein (aggravated burglary), this court upheld the imposition of the death penalty in that case. Accordingly, the sentence rendered herein is not disproportionate to penalties imposed in similar cases. Appellant's twenty-sixth proposition of law is overruled.

The judgment of the court of appeals is therefore affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., concurs in judgment only.