JOURNAL ENTRY AND OPINION
David Cramer appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of thirty-six counts of rape of his step-daughter with sexually violent predator specifications in case number 367034, and five counts of gross sexual imposition of his niece in case number 367035, both of which had been consolidated for trial. On appeal, Cramer argues that the court erred when it denied his motion for separate trials; that the prosecutor's comments during closing argument denied him a fair trial; and, that his convictions for rape and gross sexual imposition are against the manifest weight of the evidence. After reviewing the record before us, we reject these contentions and therefore affirm the judgment of the court.
In 1988, five-year-old Debby Cramer began living with her stepfather, David Cramer, in Bedford, Ohio. At that time, Cramer began a pattern of sexually abusing her, which continued until she reached the age of fifteen, when she went to live with her aunt and uncle in Florida.
On April 20, 1998, Cramer filed a missing persons report with the Maple Heights Police Department alleging that Debby had run away from home on April 16, 1998. Maple Heights Detective Robert Wendland investigated the report and discovered the Florida Department of Children Services had Debby in their custody and that she had alleged sexual abuse by Cramer. On May 25, 1998, Debby returned to Cleveland to be interviewed by Detective Wendland and to be examined by Dr. Mark Feingold of MetroHealth Hospital.
The record further reveals that Cramer's indictment for the charges of gross sexual imposition stem from sexual contact with his niece, Melissa Newhouse. Cramer sexually abused Melissa on five different occasions, beginning at the age of five and continuing until the age of twelve or thirteen.
On August 25, 1998, in case number 367035, involving Melissa Newhouse, the grand jury returned a five count indictment against Cramer for gross sexual imposition from 1990 to June 30, 1996.
Subsequently, on August 28, 1998, in case number 367034, the grand jury returned a thirty-six count indictment alleging Cramer committed rape against Debby Cramer from 1987 until April 12, 1998.
On January 14, 1999, the state moved to join the indictments for trial, and the court granted that motion. At trial, the jury heard testimony from eleven witnesses during the state's case-in-chief, Debby Cramer, Joanne Rice, Delores Newhouse, Dorothy Dickens, Dr. Mark Feingold, Jacquiline Hunt-Ledford, Detective Robert Wendland, Melissa Newhouse, Christy Ramirez, Carol Newhouse, Celeste Hogan. Dr. Joseph Shawi and Donovan Cramer testified for the defense. During closing argument at trial, defense counsel objected to the prosecutor's reference to Cramer as a pedophile, and the court sustained that objection. Following deliberation, the jury returned a guilty verdict as to all counts contained in both indictments. Subsequently, on June 9, 1999, the court sentenced Cramer for the charge of rape to a term of imprisonment of ten years to life on counts one through sixteen, five years to twenty-five years on counts seventeen through twenty-one, and life imprisonment on counts twenty-two through thirty-six. For the charge of gross sexual imposition, the court sentenced Cramer to a term of two years on each of the five counts. Additionally, the court imposed a fine totaling $55,000.00.
Cramer now appeals, setting forth four assignments of error for our review. The first states:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO GRANT APPELLANT'S MOTION FOR SEPARATE TRIALS WHICH CAUSED THE ADMISSIBILITY OF OTHER ACTS EVIDENCE AGAINST THE DEFENDANT-APPELLANT WHICH OTHERWISE WOULD NOT HAVE BEEN ADMISSIBLE.
Here, Cramer maintains that the court erred when it granted the state's motion to join the indictments for purposes of trial because the joinder permitted testimony of the gross sexual imposition case to be admitted during the rape trial.
The state, however, asserts that the court properly ordered the two cases be tried together pursuant to Crim.R. 13.
Thus, we are concerned with whether Cramer had been prejudiced when the court conducted a combined trial for the charges of rape and gross sexual imposition.
Crim.R. 13 states in part:
 The court may order two or more indictments or information or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.
Further, Crim.R. 14 provides in part:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment * * * the court shall order an election or separate trial of counts
* * *
In accordance with Evid.R. 404(B), evidence of other crimes, wrongs or acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Additionally, in State v. Lott (1990), 51 Ohio St.3d 160, the court stated:
 [W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as other acts under Evid.R. 404(B). (citation omitted).
The Ohio Supreme Court has used simple and distinct and simple and direct interchangeably. See State v. Echols (1998), 128 Ohio App.3d 677.
In order to prevail, a defendant must demonstrate that his rights were prejudiced by the failure to sever, that he provided the court sufficient information to allow it to weigh the benefits of joinder against his right to a fair trial and that the court abused its discretion by failing to sever the charges for trial. State v. Schaim (1992), 65 Ohio St.3d 51. However, the court in State v. Wiles (1991), 59 Ohio St.3d 71 stated that prejudice is negated if the evidence admissible for each count would have been admissible in the trial of the other counts under Evid.R. 404(B), or, if the evidence as to each count is sufficiently simple and distinct.
In Echols, supra, the court stated:
 The object of the simple and distinct test is to prevent the jury from improperly considering evidence of other crimes as corroborative of each other.
The essence of the rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it. Schaim, supra.
Here, joinder of the two indictments is not prejudicial because under Evid.R. 404(B), evidence of the other offenses is admissible in each case to establish Cramer's opportunity, identity, preparation and plan. Both indictments allege sexual abuse of young girls who are related to Cramer, most of the incidents occurred in the same location, the offenses themselves are similar in character and manner, and are part of a course of criminal conduct beginning when the girls were five years old and continued over the course of several years.
Additionally, the testimony presented by the two victims had been simple and distinct. Both victims communicated to the jury the approximate dates, location and manner in which the sexual abuse had occurred and the jury segregated the evidence it heard regarding the offenses against Melissa Newhouse from the offenses against Debby Cramer. Therefore, we have concluded that the court did not err when it joined the indictments because under both Evid.R. 404(B), Lott, and the simple and distinct test, the other acts evidence is admissible in the other case. Further, pursuant to Crim.R. 13, the offenses could have been joined in a single indictment. Accordingly, this assignment of error is not well taken.
 II. THE PROSECUTOR'S MISCONDUCT VIOLATED DEFENDANT-APPELLANT'S RIGHTS TO A FAIR TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Cramer urges that the prosecutor's reference to him as a pedophile during closing argument constituted prosecutorial misconduct and violated his right to a fair trial.
The state maintains that the prosecutor's reference is unremarkable in light of the overwhelming evidence of Cramer's guilt.
Here, we are concerned with whether the prosecutor's comments during closing argument denied Cramer a fair trial.
The court in State v. Apanovitch (1987), 33 Ohio St.3d 19, stated that a prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. Further, in Smith v. Phillips (1982),455 U.S. 209, the court stated:
 [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.
The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. State v. Maurer (1984),15 Ohio St.3d 239. The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper, and if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13.
In State v. Benge (1996), 75 Ohio St.3d 136 stated:
 We are mindful that a prosecutor is entitled to a certain degree of latitude in closing argument. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty. (Citations omitted.)
During closing argument, the prosecutor referred to Cramer as a pedophile on five occasions. A pedophile is defined as someone who is affiliated with pedophile, a sexual perversion in which children are the preferred sexual object. This is a descriptive term used in argument, not a derogatory one used to mock or ridicule the accused. As such, in this case, it is not misconduct in that the characterization is not improper and therefore did not affect the rights of the accused. Accordingly, this assignment of error is not well taken.
As the third and fourth assignments of error deal with similar issues, they will be addressed together.
 III. THE TRIAL COURT'S FINDING OF THE DEFENDANT-APPELLANT GUILTY OF 36 COUNTS OF RAPE IN CASE NUMBER 367034, A VIOLATION OF RC 2907.02, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT'S FINDING DEFENDANT-APPELLANT GUILTY FOR 5 COUNTS OF GROSS SEXUAL IMPOSITION IN CASE NUMBER 367035, A VIOLATION OF RC 2907.05, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Cramer urges that his convictions for thirty-six counts of rape and five counts of gross sexual imposition are against the manifest weight of the evidence.
The state, however, maintains that it proved all the elements of rape and gross sexual imposition beyond a reasonable doubt.
The issue, then, concerns whether Cramer's convictions for these crimes are against the manifest weight of the evidence.
The court in State v. Martin (1983), 20 Ohio App.3d 172, stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380, stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.
 It indicated clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
In these cases, the state assumed the burden to prove Cramer's guilt of rape and gross sexual imposition beyond a reasonable doubt. Rape is defined by R.C. 2907.02 (A)(2) as follows:
 No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
Gross sexual imposition is defined by R.C. 2907.05(A), which states:
 No person shall have sexual contact with another * * * when any of the following applies:
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
In support of its burden to prove the offense of rape, the state called Debby Cramer, who testified that Cramer forcibly raped her anally and vaginally for ten years, beginning at the age of five. She further testified that in April 1998, she told her grandmother, Delores Newhouse, that she would kill herself if forced to return home. Debby stated that her grandmother sent her to Florida to stay with her aunt and uncle and that the Florida Department of Children Services were contacted to assist her.
The state next called Joanne Rice, Debby's aunt, who testified she contacted the Florida Department of Children Services after Debbie told her and her husband that Cramer had been raping her since age five.
Delores Newhouse testified that on April 12, 1998, Debby told her that she had contemplated suicide and that she did not want to return to her home. Newhouse knew the Cramers locked Debby in her room as punishment. She stated that she sent Debby to Florida to stay with her aunt and uncle because she deemed the situation to be a serious one that would blow over in a few weeks.
Dorothy Dickens testified that she is employed in the Social Work Department in MetroHealth Medical Center and works specifically in the Pediatric Alpha Clinic for sexually abused children. Dickens testified that she conducted a psychological social assessment of Debby and noted her mother has chronic health problems and there is a history of conflict between parent figures, domestic violence, and the biological father's history of alcoholism.
The state then called Dr. Mark Feingold, a pediatrician currently employed by MetroHealth Medical Center who oversees the Alpha Clinic, set up to examine children suspected of being sexually abused. Dr. Feingold testified that he conducted a physical examination of Debby and concluded that she had normal laboratory tests and her physical examination had been normal. However, he would not rule out the possibility that Debby had been sexually abused.
Jacquiline Hunt-Ledford, the Maple Heights middle school assistant principle testified that Debby had been one of the students under her supervision. She stated that Debby experienced difficulty in adjusting to public school because she had been home schooled.
The state then called Detective Robert Wendland, who testified that he had been assigned to a missing persons report alleging that Debby Cramer had run away from home. During the course of his investigation, he discovered that Debby had been in the custody of the Florida Department of Family Services, and that there had been a report filed with the CCDCFS, alleging Cramer had abused Melissa Newhouse. Wendland contacted the Newhouses, who had since moved to Kentucky and arranged for an officer there to interview Melissa Newhouse. Wendland interviewed Debby Cramer upon her return to Cleveland and learned of the pattern of sexual abuse perpetrated by Cramer.
Regarding the state's burden of proving the elements of gross sexual imposition, the state called Melissa Newhouse, who testified that Cramer began sexually abusing her sometime in 1990 at the age of five by fondling her breasts, genitals and buttocks. She further stated that Cramer sexually abused her on five different occasions, the last incident occurring at age thirteen. During one of the incidents, Cramer threatened that if she told anyone, he would hurt her or her family. She stated that she eventually told her brother and Debby, who stated that she had been sexually abused also.
Christy Ramirez testified that she taught Melissa in Bible class and that Melissa told her that she and her cousin had been sexually abused by Cramer.
Carol Newhouse, Melissa's mother, testified that Melissa told her Cramer had sexually abused her and Debby. She eventually moved to Kentucky to keep Cramer away from Melissa.
The state then called Celeste Hogan, a social worker with Cuyahoga County Department of Children and Family Services, who investigated allegations made by Melissa that Cramer had sexually abused her. She interviewed Melissa, her parents and Cramer and forwarded the information to the Maple Heights Police Department.
For its case-in-chief, the defense called Dr. Joseph Shawi, who testified that he examined Debby in November 1997 in connection with her mother's concern that Debby had been sexually active. Shawi concluded at that time the hymenal ring had been intact, there were no lacerations or black and blue marks area of the rectum or vagina and he opined that Debby had not had sexual intercourse.
The defense then called Debby's brother, Donovan Cramer, who testified he did not believe Cramer sexually abused Debby. The defense then rested.
In accordance with Martin, and after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that the jury, in resolving conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice when it found Cramer guilty of rape and gross sexual imposition. Accordingly, this assignment of error is not well taken and the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
ANN DYKE, A.J., PATRICIA A. BLACKMON, J., CONCUR
TERRENCE O'DONNELL, JUDGE