OPINION
{¶ 1} Howard E. Reeves appeals from his conviction and sentence following his no-contest plea to a charge of rape.[1]
{¶ 2} Reeves advances two assignments of error on appeal. First, he contends that the trial court erred when it overruled his motion to suppress a confession he made to police. Second, he argues that the trial court erred by entering a finding of guilty on a no-contest plea that was not made knowingly.
{¶ 3} Upon review, we find both assignments of error to be unpersuasive. The transcript of Reeves' suppression hearing reflects that he voluntarily appeared at the Xenia police station to speak with an investigator about a rape allegation against him. On the day of the interview, Reeves' mother drove him to the police station. Upon his arrival, detective Alonzo Wilson asked if he wanted to speak about the incident. Reeves responded affirmatively and accompanied the detective to a small interview room. Wilson told him that the door was being closed for privacy and explained that he "was free to go if he wanted." The detective added that he would not be arrested that day regardless of what he said. Reeves indicated that he understood, and a 40 to 45-minute, taped interview followed.
{¶ 4} During the interview, Wilson never blocked the door, and Reeves never expressed a desire to stop talking, to leave, or to speak with an attorney. A number of times during the interview, Wilson asked whether Reeves had penetrated the nine-year-old victim's vagina with his finger. The detective also falsely indicated several times that Reeves' finger hair had been found in or near the victim's vagina. In addition, Wilson inquired whether the victim was "just curious" or whether he had forced her to participate. After initially denying the allegations against him, Reeves admitted placing his finger inside the victim's vagina. At the conclusion of the interview, he left with his mother.
{¶ 5} Reeves subsequently moved to suppress his confession, arguing that "[t]he totality of the circumstances, including the false representations, absence of Miranda warnings and illegal videotape, pressuring and repetitious interrogative manner, caused Defendant's will to be overborne. . . ." The trial court overruled the motion, holding that Reeves was not in custody at the time of his confession and that his confession was voluntary under the totality of the circumstances.
{¶ 6} On appeal, Reeves insists that his confession to detective Wilson was not voluntary. In support, he cites the following facts: (1) he was placed in a small room with a closed door, (2) he was questioned for approximately 45 minutes, (3) the interview was taped without his knowledge or consent, (4) the detective left him alone for a short period of time, (5) he was not informed of his Miranda rights, (6) he was asked repeatedly whether he had placed his finger in the victim's vagina, (7) he was not accompanied by counsel, (8) the detective falsely represented several times that hair from Reeves' hand had been found in or near the victim's vagina; and (9) the detective inquired into whether he had forced the victim to participate or whether she had been "just curious."
{¶ 7} Having reviewed Reeves' arguments, we find his first assignment of error to be without merit. A suspect's decision to waive his Fifth Amendment privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. State v. Otte (1996), 74 Ohio St.3d 555; State v. Petitjean
(2000), 140 Ohio App.3d 517. The voluntary nature of a defendant's statement is determined from the totality of the circumstances. State v.Slagle (1992), 65 Ohio St.3d 597; State v. Treesh (2001),90 Ohio St.3d 460. A confession is involuntary if, under the totality of the circumstances, the defendant's will was overborne by the circumstances surrounding his giving of the confession. Petitjean, supra.
{¶ 8} The totality-of-the-circumstances test takes into consideration both the characteristics of the accused and the details of the interrogation. Id. Factors to be considered include the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.State v. Loza (1994), 71 Ohio St.3d 61, 66. Use of deceit by the interrogating police officers and misrepresentations made to the suspect about the evidence police possess do not per se render a confession involuntary. Rather, deceit or a misrepresentation about the evidence is but one factor bearing on voluntariness. State v. Waldo (Sept. 21, 2001), Champaign App. No. 99CA24.
{¶ 9} In the present case, most of the circumstances cited by Reeves do little, if anything, to suggest that his confession was involuntary. We find little significance in the fact that Wilson interviewed him for 45 minutes in a small, closed room. The interview was not particularly lengthy, and Wilson explained that he was closing the door for privacy and that Reeves was free to leave. In addition, we fail to see how taping the interview without Reeves' knowledge or consent could have rendered his confession involuntary. Likewise, the fact that the detective left him alone for a few seconds is not indicative of conduct that might tend to render a confession involuntary.
{¶ 10} Concerning the absence of Miranda warnings, we agree with the trial court's assessment that no such warnings were required as Reeves was not in custody at the time of his confession. "Police are not required to administer Miranda warnings to everyone whom they question. `Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.' Only custodial interrogation triggers the need for Miranda warnings. The determination whether a custodial interrogation has occurred requires an inquiry into `how a reasonable man in the suspect's position would have understood his situation.' `[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" State v. Biros (1997), 78 Ohio St.3d 426, 440
(citations omitted).
{¶ 11} Although Reeves was suspected of rape and Wilson questioned him at the police station, these facts do not establish that he was in custody at the time of his confession. There was no formal arrest, and there was no restraint on Reeves' freedom of movement. As noted above, he voluntarily appeared at the police station to speak with an investigator. Reeves responded affirmatively when asked whether he wanted to talk about the allegation against him. He then accompanied the detective to an interview room and was told that he "was free to go if he wanted." Wilson never blocked the door, and Reeves never expressed a desire to stop talking, to leave, or to speak with an attorney. After confessing, he left the police station with his mother. In short, we find no evidence indicating that Reeves was under arrest or that police imposed any restraint on his freedom of movement. In light of this conclusion, we find no significance in the fact that he was not advised of his Miranda rights. In addition, given that Reeves voluntarily appeared for questioning, the fact that counsel did not accompany him does nothing to render his confession involuntary.
{¶ 12} Two other circumstances cited by Reeves warrant closer analysis. As noted above, he stresses that detective Wilson lied about one of his hairs being discovered in or near the victim's vagina. He also notes that the detective inquired into whether he had forced the victim to participate or whether she had been "just curious." According to Reeves, both of these facts suggest that his confession was involuntary.
{¶ 13} Upon review, we cannot agree. With respect to Wilson's misrepresentation of the evidence, we recognized in Waldo, supra, that a police officer's misrepresentation about the evidence against a defendant does not per se render a confession involuntary. Rather, such a misrepresentation "is but one factor bearing on voluntariness." See alsoState v. Baker (Nov. 4, 1995), Athens App. No. 94CA1644 (stating that "trickery and deception" such as a false statement regarding "the type and quantum of evidence" against a defendant is by itself insufficient to render a confession involuntary). In the present case, detective Wilson admittedly misrepresented the nature of the evidence against Reeves. Such a tactic "is certainly not without precedent and has previously been found not to render a statement involuntary." State v. Caulley (March 14, 2002), Franklin App. No. 97AP-1590. Having examined the record in the present case, we agree with the trial court that Wilson's misrepresentation did not render Reeves' confession involuntary. The misrepresentation did not constitute unduly coercive police activity, and under the totality of the circumstances cited above, we conclude that Reeves' free will was not overborne.[2] See id. (recognizing that "not all deception rises to the level of undue coercion"); State v. Bays
(1999), 87 Ohio St.3d 15, 23 (noting that "`[a] defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is'"); State v. Wiles
(1991), 59 Ohio St.3d 71, 81 (recognizing that police deception, standing alone, does not render a confession involuntary).
{¶ 14} We also find no merit in Reeves' suggestion that Wilson threatened to charge him with forceable rape of a child if he refused to confess to placing his finger inside the victim's vagina. In support of this argument, Reeves cites Wilson's inquiry about whether he forced the victim to participate or whether she was "just curious." According to Reeves, this question constituted a threat that if he did not admit to placing his finger inside the vagina of a willing female, then he would be prosecuted for a crime with a mandatory life sentence. Reeves also contends that the detective's inquiry constituted an implied promise that he would not be prosecuted at all if the minor victim was "just curious" and willingly participated.
{¶ 15} Upon review, we cannot agree with the foregoing characterization of Wilson's inquiry. Although the detective's question may have lulled Reeves into a false sense of security if he confessed to engaging in sexual activity with a willing victim, the detective never threatened to file charges for forceable rape of a child. Wilson also never mentioned the possibility of a life sentence if such charges were filed. Nor did the detective promise to withhold prosecution if Reeves confessed to sexual conduct with a willing child. In short, Wilson simply asked whether Reeves had forced the victim to participate or whether she had done so willingly. Under the totality of the circumstances, we cannot say that this question resulted in undue compulsion or coercion sufficient to render Reeves' confession involuntary.
{¶ 16} At no time during his interview did Reeves invoke his right to terminate the questioning. He was not physically restrained, threatened, abused, deprived of necessities, promised anything or intimidated by his questioner. On the totality of the facts and circumstances surrounding his confession, we conclude that Reeves' will to resist confessing was not overborne by coercive police conduct. Therefore, his statements to Wilson were not involuntary, and the trial court properly overruled his motion to suppress those statements. Accordingly, we overrule his first assignment of error.
{¶ 17} In his second assignment of error, Reeves argues that the trial court erred by entering a finding of guilty on a no-contest plea that was not made knowingly. More specifically, he contends that the trial court failed to comply with Crim.R. 11(C)(2)(a), which provides that in felony cases a court shall not accept a plea of guilty or no contest without first addressing the defendant personally and determining that he is making the plea voluntarily, with an understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.
{¶ 18} On appeal, Reeves asserts that the trial court violated the portion of Rule 11(C)(2)(a) which obligated it to ensure that he understood the nature of the charge against him. Upon review, we find this argument to be unpersuasive. Although strict compliance with the requirements of Rule 11(C)(2)(a) is preferred, we long have recognized that substantial compliance is sufficient. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea. . . ." State v. Nero (1991),56 Ohio St.3d 106, 108.
{¶ 19} "`In order for a trial court to determine that a defendant is making a plea with an understanding of the nature of the charge to which he is entering a plea, it is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge. In other words, under some circumstances, the trial court may be justified in concluding that a defendant has drawn an understanding from sources other than the lips of the trial court.'" State v. Ferrell (Oct. 23, 1998), Clark App. No. 97CA114, quoting State v. Rainey (1982),3 Ohio App.3d 441, 442; see also State v. Blair (1998),128 Ohio App.3d 435, 437-438 (reasoning that in order to demonstrate compliance with Crim.R. 11, the record must establish that someone
provided the defendant with an understanding of the nature of the charge against him).
{¶ 20} In the present case, the totality of the circumstances persuades us that Reeves adequately understood the nature of the rape charge against him. As an initial matter, we note that the indictment specified the elements of the offense. Furthermore, Reeves signed a no-contest petition that stated: "I have received a true copy of the indictment/information at least 24 hours before being called upon to plead. I have read or have had read to me the indictment/information and have discussed it with my lawyer and I fully understand the charge(s) and the elements contained within the charge(s) made against me." The no-contest petition also stated: "My lawyer has counseled with me and advised me as to the nature of the charge(s), the elements contained therein, and all the lesser charge(s) and on all possible defenses that I might have in this case." Finally, the no-contest petition stated: "I know that a plea of `No Contest' shall constitute an admission from which the judge may make a finding of guilty or not guilty from the explanation of circumstances. . . ."
{¶ 21} In addition to the no-contest petition, the trial record contains a certificate of counsel signed by Reeves' attorney. In relevant part, the certificate states: "I have read and fully explained to the Defendant the allegations contained in the indictment in this case. . . . The plea of `No Contest' offered by the Defendant accords with my understanding of the facts he related to me and is consistent with my advi[c]e to the Defendant. In my opinion the plea of `No Contest' offered by the Defendant is voluntary and understandingly made."
{¶ 22} Finally, we note that the trial court did engage in a colloquy with Reeves at the plea hearing. At that time, Reeves indicated, among other things, that he was then 54 years old and that he had completed 12 years of school. Reeves also stated that he had reviewed the no-contest petition with his attorney and that he "understood it all." In addition, Reeves expressed an understanding that the trial court would determine his guilt based solely on a statement of facts to be read into the record by the prosecutor. Shortly thereafter, the trial court accepted his no-contest plea. Following the trial court's acceptance of the plea, the prosecutor recited the statutory elements set forth in the indictment and then read the following relevant facts[3] into the record: "[B]riefly, the underlying facts . . . are as follows: On July 28, 2001, the Defendant, Mr. Howard Reeves, took his hand and rubbed up and down the thigh area of a 9-year-old victim. Subsequently the Defendant took a finger and inserted the finger into the vaginal area of that victim. . . ." After the prosecutor recited the foregoing facts, the trial court found Reeves guilty of rape.
{¶ 23} The totality of the foregoing circumstances persuades us that Reeves understood the nature of the rape charge against him, despite the trial court's failure explicitly to explain the nature of the charge. Cf. Ferrell, supra at *3 (finding substantial compliance with Crim.R. 11, on similar evidence, with respect to a defendant's understanding of the nature of the charge against him); see also Rainey, supra at 442.
{¶ 24} As we recognized in Blair, 128 Ohio App.3d at 437, if a defendant receives proper information regarding the nature of a charge against him, it ordinarily may be assumed that he understands that information. For purposes of finding substantial compliance with Crim.R. 11, then, a reviewing court need only determine whether the trial court, defense counsel, or someone else provided the defendant with information regarding the nature of the charge against him. Id., citing State v.Carter (1979), 60 Ohio St.2d 34, 38. In the present case, the totality of the circumstances set forth above reveals that Reeves acquired from his attorney information regarding the nature of the charge against him. In addition, the totality of the circumstances set forth above adequately and affirmatively demonstrates that Reeves understood the nature of the rape charge. See id. ("The record must demonstrate that [the] defendant has acquired an understanding of the nature of the charges against him, from whatever source, be it from the trial court itself, the prosecutor, or some other source, such that the trial court can determine that [the] defendant understands the charges to which he was pleading guilty or no contest.").
{¶ 25} In opposition to the foregoing conclusion, Reeves argues only that the trial court failed to ask him whether the facts recited by the prosecutor were the facts that he conceded by virtue of his no-contest plea. In State v. Patrick (October 5, 1994), Montgomery App. No. 13954, we recognized that having a prosecutor recite the facts supporting a charge to which a defendant is entering a plea is "an acceptable procedure to follow in the course of determining whether the defendant understands the nature of the charge against him[.]" In fact, in that case the prosecutor's recitation of the facts was the only basis on which the trial court could have found that the defendant understood the nature of the charge against him. In the present case, however, the record contains other evidence, discussed above, which persuades us that Reeves understood the nature of the rape charge against him. Consequently, we find substantial compliance with Crim.R. 11(C)(2)(a), despite the trial court's failure to ask whether Reeves conceded the facts set forth by the prosecutor. Accordingly, we overrule Reeves' second assignment of error and affirm the judgment of the Greene County Court of Common Pleas.
Judgment affirmed.
FAIN, J., and GRADY, J., and concur.
[1] The record reflects that Reeves also entered a no-contest plea to a charge of sexual battery in a related case, Greene C.P. Case No. 2001-CR-626. The present appeal is from only the judgment entry of conviction following his no-contest plea to a charge of rape in Greene C.P. Case No. 2001-CR-403.
[2] In particular, we note that Reeves voluntarily appeared at the police station and consented to speak with Wilson. The detective informed him that he was free to leave and that he would not be arrested that day no matter what he said. The record reflects that Reeves was 53 years old at the time of his confession, he had completed 12 years of school, and he had prior experience in the criminal justice system. The length and intensity of Reeves' interrogation were unremarkable, he was questioned only on one occasion, and we see no evidence of physical deprivation, mistreatment, threats or inducements to confess.
[3] As noted supra, Reeves entered a plea of no contest to the rape charge and to a related charge of sexual battery. The present appeal concerns only the rape charge.