OPINION
{¶ 1} Appellant Julie M. Lyall, nka Baxter, appeals the decision of the Court of Common Pleas, Muskingum County, which reallocated parental rights and responsibilities regarding her minor son, Lakota. Appellee Myron T. Lyall is appellant's ex-husband and the father of said child. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married in 1996. On May 14, 1998, a decree of divorce was issued in Muskingum County, which granted, inter alia, custody of Lakota to appellant, with appellee having visitation per the court's standard order.
 {¶ 3} On October 8, 2002, appellant filed a motion to modify parental rights and responsibilities. Said motion indicated that appellant had married Richard Baxter, that she had employment in Virginia, and that she "intend[ed] on relocating" to Spout Springs, Virginia, with the child. On November 25, 2002, appellee filed his own motion, seeking designation as Lakota's residential parent. Both motions were heard at an evidentiary hearing on May 7, 2003, during which both parties testified, and the testimony and report of J. Michael Harding, Ph.D. were presented.
 {¶ 4} On August 1, 2003, the trial court issued a judgment entry granting appellee the status of residential parent and legal custodian of Lakota. The court further incorporated a parenting time schedule to allow appellant's visitation, and ordered appellant to pay child support of $166.25 per month, plus processing charges.
 {¶ 5} On August 25, 2003, appellant filed a notice of appeal, and herein raises the following five Assignments of Error:
 {¶ 6} "I. It was prejudicial error and against [the] manifest weight of the evidence for the trial court to find that plaintiff had permanently relocated her residence to lynchburg virginia.
 {¶ 7} "II. It was prejudicial error for the trial court to consider plaintiff/appellee's [sic] request for ruling on paragraph 13 of the muskingum county, ohio standard parenting time order as a basis for change in circumstances.
 {¶ 8} "III. It was prejudicial error to the determinant [sic] of plaintiff-appellant and not in the best interest of the child for the trial court to find that a change in residential parent was in the best interest of the minor child.
 {¶ 9} "IV. It was prejudicial error and against the manifest weight of the evidence to find that the harm caused by a change in residential parent from plaintiff-appellant to defendant-appellee would be less harmful than allowing plaintiff-appellant to remain as the residential parent.
 {¶ 10} "V. It was prejudicial error and against the manifest weight of the evidence to order plaintiff-appellant to pay child support and no change in circumstances had occurred.
 I., II. {¶ 11} We will address the first two assigned errors together. In her First Assignment of Error, appellant argues that the court's finding of appellant's permanent relocation to Lynchburg, Virginia, was against the weight of the evidence. In her Second Assignment of Error, appellant contends the trial court erred in concluding a change of circumstances had occurred based on appellant's request for a parental rights and responsibilities ruling regarding her move to another state. We disagree on both counts.
 {¶ 12} In the case sub judice, the trial court concluded as follows regarding the issue of change of circumstances:
 {¶ 13} "In the present case, the Court finds that the marriage of plaintiff and the subsequent relocation of her permanent residence to Lynchburg, Virginia, some 370 miles from Zanesville, Ohio, is a substantial change in the circumstance of the residential parent such that the Court may consider defendant's motion to reallocate to him the designation of residential parent and legal custodian." Judgment Entry at 1.
 {¶ 14} In reviewing a manifest weight of the evidence claim, our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279. However, it is well-established that Civ.R. 52, requiring separate findings of fact and conclusions of law, upon timely request, applies to custody proceedings involving questions of fact determined in non-jury trials. Werden v.Crawford (1982), 70 Ohio St.2d 122, syllabus. In Pettet v.Pettet (1988), 55 Ohio App.3d 128, we explained that "* * * when separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with his judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence." Id. at 130.
 {¶ 15} As appellee notes in his response brief, evidence was produced during the proceedings of May 7, 2003, which reveals that appellant had already begun residing in Virginia in the fall of 2002, and that she moved back to Ohio only because of the court's temporary order that the child's residence was to be maintained in Ohio. See Tr. at 106, 119. Therefore, especially in light of appellant's failure to request findings of fact and conclusions of law in order to illuminate the court's reasoning on the issue, we find there was a sufficient basis for a determination that appellant was residing in Virginia in the present sense of the word.
 {¶ 16} In regard to the issue of "change of circumstances," R.C. 3109.04(E)(1)(a) reads in pertinent part as follows: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. * * *."
 {¶ 17} In Masters v. Masters (1994), 69 Ohio St.3d 83, the Ohio Supreme Court found a trial court abuses its discretion when it modifies custody based solely upon evidence that the residential parent intends to leave the State of Ohio with the child. Id. at 85-86. In Browne v. Browne (Sept. 21, 1995), Ashland App. No. 95CA44, this court recognized the holding ofMasters, supra, noting that the Ohio Supreme Court had "found it unconscionable for a trial court to treat a parent's desire to leave the state as a substantial change in circumstances."
 {¶ 18} As a reviewing court, we may reverse a trial court's decision allocating parental rights and responsibilities only where an abuse of discretion has occurred. Miller v. Miller
(1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. We have herein previously concluded that the court's finding of appellant's out-of-state relocation was not against the manifest weight of the evidence. In addition, a review of the record reveals that appellant's motion of October 8, 2002, itself asserts that there has been a substantial change in her circumstances. It is well accepted law that a party is not permitted to complain of an error which said party invited or induced the trial court to make. See State v. Kollar (1915), 93 Ohio St. 89, 91. Accordingly, we do not find the trial court abused its discretion by finding a change in circumstances based on appellant's relocation to another state.
 {¶ 19} Appellant's First and Second Assignments of Error are overruled.
 III., IV. {¶ 20} In her Third and Fourth Assignments of Error, appellant contends the trial court erred in concluding that a change in residential parent status was in Lakota's best interest. We disagree.
 {¶ 21} In determining the best interest of a child in custody matters, R.C. 3109.04(F)(1) directs that "* * * the court shall consider all relevant factors, including, but not limited to:
 {¶ 22} (a) The wishes of the child's parents regarding the child's care;
 {¶ 23} (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 24} (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 25} (d) The child's adjustment to the child's home, school, and community;
 {¶ 26} (e) The mental and physical health of all persons involved in the situation;
 {¶ 27} (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 28} (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 29} (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 30} (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 31} (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 32} An appellate court's standard of review in custody matters is abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When a trial court functions as a finder of fact, it is presumed the court considers only properly admitted evidence. State v.Wiles (1990), 59 Ohio St.3d 71.
 {¶ 33} The evidentiary hearing in the case sub judice consisted of the testimony of appellant and appellee, and the testimony and written report of Michael Harding, Ph.D. Appellant testified she had been the custodial parent of Lakota, born in 1995, since he was one year old. She also has had custody of Lakota's half-sister, age four at the time of hearing, during this period. Tr. at 101. Appellant's new husband intends to adopt the sister. Appellant also felt that her new husband could act as a "father figure" to Lakota. Tr. at 112. Additionally, although appellant testified she has been unemployed in Ohio since 2001, she opined that she would have better job opportunities in Virginia. Tr. at 109, 111.
 {¶ 34} Appellee testified that he is employed at Longaberger Co., on a full-time basis. He stated he has spent time with Lakota in activities such as camping and fishing, and that he takes him on an annual vacation to places such as Myrtle Beach and Cedar Point. Tr. at 114. Appellee also indicated that he helps Lakota with reading and spelling during weekend visitation. Tr. at 118. Appellee also maintained that he did not involve Lakota in his other personal relationships. Tr. at 114. Appellee accused appellant of retaliating against him for obtaining the temporary order to keep Lakota in Ohio, by curtailing appellee's extra Sunday visitation. Tr. at 119. Appellee further summarized: "I believe his whole support system, his grandparents, myself, friends, and family are all right here, right here in Ohio. I think pulling him away from all of the support system would be awfully hard for him." Tr. at 121. The court later additionally found that "[s]hould Lakota be located in Virginia, Mr. Lyall would have additional expense of housing while exercising parenting time in Virginia * * *." Judgment Entry at 2.
 {¶ 35} As the trial court recognized, neither parent has any physical problems that would impact his or her ability to carry out the role of residential parent, and each parent's MMPI-2 evaluation by Dr. Harding was within normal limits. Although appellee reported to Dr. Harding a past conviction for driving while intoxicated, appellee's profile presented no emotional or psychological problems. However, despite appellant's normal MMPI-2 profile, "[h]er scores on the addiction proneness indicators suggest the possibility of an addictive disorder." Harding Report at 12. Appellant reported to Dr. Harding a past episode of physical abuse by a boyfriend and a criminal conviction for obstruction of justice and tampering with evidence in 1992. Appellant also told Dr. Harding she had been diagnosed with bipolar disorder as an adolescent. Dr. Harding also noted:
 {¶ 36} "Although within the normal range, certain aspects of Ms. Baxter's MMPI-2 clinical profile suggest that her symptoms and problems are not as prominent as those of most individuals in mental health assessment settings. However, she reported some tendency toward impulsiveness and anger proneness under conditions of conflict. This behavior pattern includes some persistent personality features that reflect emotional lability and impulsiveness. These characteristics are probably reflective of her Bipolar Disorder." Harding Report at 12.
 {¶ 37} The report indicated that Lakota himself is "well-adjusted" and has a good relationship with both parents. Harding Report at 17. The report recognized that custody with appellee would mean removal of Lakota from his mother and sister, with whom he has probably spent the most time in his life; on the other hand, custody with appellant would remove the child from his father, both sets of grandparents, and his community support structures. Id. (See R.C. 3109.04(F)(1)(c); In re Marriage ofShore (1999), 135 Ohio App.3d 374, 387, citing Hammons v.Hammons (May 4, 1994), Gallia App. No. 93CA24: "Maintaining close family ties with extended family members has been determined to be in a child's best interest.")
 {¶ 38} In addressing such formidable decisions in the family law arena, we frequently emphasize that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. Thompson v.Thompson (1987), 31 Ohio App.3d 254, 258, citing Trickey v.Trickey (1952), 158 Ohio St. 9, 13. "These types of cases present some of the most difficult and heart wrenching issues that courts are called to decide." Dannaher v. Newbold,
Franklin App. No. 03AP-155, 2004-Ohio-1003, ¶ 97. Nonetheless, the trier of fact is in a far better position to observe the witnesses' demeanor and weigh their credibility. See State v.DeHass (1967), 10 Ohio St.2d 230.
 {¶ 39} Accordingly, our review of the cold transcript in the matter sub judice does not indicate that appellate reversal under these facts and circumstances would be warranted against the trier of fact who observed the proceedings firsthand.
 {¶ 40} Therefore, appellant's Third and Fourth Assignments of Error are overruled.
 V. {¶ 41} In her Fifth Assignment of Error, appellant argues the trial court erred in ordering her to pay child support. We disagree.
 {¶ 42} Appellant fails to set forth "[a]n argument containing the contentions of the appellant with respect to [the] assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies," in regard to this issue, as per App.R. 16(A)(7). However, a review of the record indicates the court completed a statutory support worksheet based on the income information before it, which appellant does not challenge. See Cutlip v. Cutlip, Richland App. No. 02CA32, 2002-Ohio-5872; Marker v. Grimm (1992), 65 Ohio St.3d 139, at paragraph one of the syllabus. Furthermore, R.C. 3119.03
indicates that the support amount calculated via the statutory worksheet is rebuttably presumed to be the correct amount.
 {¶ 43} Appellant's claim of error is without merit. Appellant's Fifth Assignment of Error is overruled.
 {¶ 44} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Muskingum County, Ohio, is hereby affirmed.
Hoffman, P.J., and Farmer, J., concur.