# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106319

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MICHAEL BUEHNER

DEFENDANT-APPELLANT

## JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-02-417994-ZA

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 13, 2018

[Cite as *State v. Buehner*, 2018-Ohio-3668.]
**ATTORNEY FOR APPELLANT**

Russell A. Randazzo
55 Public Square, Suite 2100
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Daniel T. Van
        Amy Venesile
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Michael Buehner, appeals the denial of his amended motions for leave to file a motion for new trial and for postconviction relief. He raises the following five assignments of error:

> 1. The trial court abused its discretion when it failed to hold a hearing on Buehner's motion for leave to file a motion for new trial when the record and circumstances supported Buehner's claims that he was unavoidably prevented from discovering the new evidence in violation of the United States Constitution, the Constitution of the state of Ohio, *Brady v. Maryland*, 373 U.S. 83, 97, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *State v. Johnston*, 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988).
>
> 2. The trial court abused its discretion when it failed to grant Buehner's motion for leave to file a motion for new trial or hold a hearing when Buehner established the state failed to disclose material exculpatory evidence in violation of his right to due process under the Ohio Constitution and the Constitution of the United States of America.
>
> 3. The trial court abused its discretion when it failed to grant Buehner's motion for leave to file a motion for new trial or hold a hearing when Buehner established by clear and convincing evidence that he was unavoidably prevented from discovering the exculpatory evidence within 120 days of his conviction in violation of the United States Constitution and the Ohio Constitution, Crim.R. 33(B) and *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183 (2d Dist.).
>
> 4. The trial court abused its discretion when it failed to grant Buehner's postconviction petition where the record showed Buehner was unavoidably prevented from the discovery of exculpatory evidence and but for the withholding of this evidence, no reasonable factfinder would have found Buehner guilty. Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; Article I, Sections 9, 10, and 16 of the Ohio Constitution; *State v. Gondor,* 112 Ohio St.3d 377, [2006-Ohio-6679, ]860 N.E.2d 77 [(2006)].
> 5. Alternatively, the trial court abused its discretion when it failed to grant Buehner's motion for leave to file a motion for new trial or hold a hearing when Buehner established the ineffectiveness of counsel by failing to call as

a witness, Anderson, who contradicts the only purported eyewitness testimony from two parties who received reduced sentences for cooperation with state.

{¶2} We find merit to the appeal, reverse the trial court's judgment, and remand the case to the trial court to consider Buehner's motion for new trial.

## I. Facts and Procedural History

{¶3} In July 2002, a jury found Buehner guilty of two counts of murder and one count of attempted murder in connection with the shooting death of Jerry Saunders on May 24, 2001. Lawone Edwards testified at trial that shortly before the shooting, he and Saunders were selling crack cocaine to passing motorists near the corner of Marah Avenue and East 93rd Street in Cleveland when a black pickup truck stopped, and a black male passenger asked about buying $100.00 worth of crack cocaine. Edwards and Saunders climbed into the bed of the truck that traveled a short distance before stopping near a home located at 9520 Marah Avenue.

{¶4} Edwards stood five or six feet in front of the truck to act as a lookout while Saunders approached the truck's passenger side door. Edwards testified that the unidentified black passenger exited the truck and told Saunders to deal with the man in the "middle" seat of the cab. The driver remained seated and did not participate in the conversation between Saunders and the middle passenger. According to Edwards, Saunders asked the man to show him the money before turning over the crack. The man pulled out a gun and replied, "Here's your money right here." Saunders turned and started running, but the man shot him, and Saunders fell to the ground. Edwards testified

that when the "shooter" turned and pointed the gun at him, he ran through several backyards and hid under a parked car in a driveway several houses away.

{¶5} In early June 2001, Edwards was arrested in connection with unrelated drug offenses. Detective Sahir Hasan, a homicide detective with the Cleveland Police Department, interviewed Edwards while he was in custody and obtained a detailed description of the three occupants of the black pickup truck. Edwards reported that both the driver and the "shooter" were white, and the third passenger was black. Edwards testified that he also told police that the shooter had tattoos on his arms and some sort of mark or scar by his right eye, which was consistent with Buehner's appearance. However, these details were not memorialized in the police reports.

{¶6} Detective Hasan learned from other police personnel that Buehner and another individual, Randy Price, were suspects in the shooting. Detective Hasan showed Edwards a photo array of seven white men, and Edwards immediately identified Price as the driver of the black pickup. When asked whether Edwards also identified Buehner from another photo array, Edwards explained that he "recognized the guy in the middle," but wanted to see him in person to be sure the identification was correct.

{¶7} In November 2001, Price's girlfriend, Sherry Taylor, told Detective Hasan that Price admitted to being involved in the shooting. Taylor's report to police, dated December 4, 2001, states, in relevant part:

> RANDY stated one night while he was at home, MIKE called and told him
> to come over because he wanted him to go for a ride. RANDY stated he
> went over to MIKE'S * * *. MIKE said he got ripped off on a drug deal

and he was going to take care of the guy that ripped him off. RANDY told her MIKE had got ripped off for some bad WET * * *.[1]

MIKE and his girlfriend JEANIE were fighting when RANDY got there and didn't want them to leave, so she took the plates off MIKE'S truck thinking they wouldn't leave without plates. RANDY AND MIKE left anyway, with RANDY driving MIKE'S truck. Once in the neighborhood where the guy lived, they found him and MIKE shot him after having words with the guy. RANDY stated MIKE called out to him and then said, "Look * * * Look * * * I SHOOT [sic] HIM." As the male laid on the ground moving around MIKE shot him again and told the guy to just lay there.

Once back in the truck[,] they went back to MIKE'S house and put the truck into the garage. MIKE was high and freaking out. Afterwards, RANDY AND MIKE went back outside and cleaned the truck up. MIKE made JEANIE pack her bags. RANDY, MIKE and JEANIE went to DEERFIELD in B[E]RLIN LAKE for a few days until things cooled off. * * *

{¶8} Price was subsequently arrested in connection with Saunder's murder, and Edwards positively identified Price in a physical lineup as the driver of the pickup truck. Price was later charged with two counts of aggravated murder with firearm and death penalty specifications. He was also charged with one count of attempted aggravated murder and one count of aggravated robbery, each with firearm specifications.

{¶9} Price admitted to police that he was the driver of the black pickup truck involved in the shooting, but claimed that Buehner was the shooter. Buehner was subsequently arrested, and Edwards positively identified him as the shooter in a physical lineup. As a result, Buehner was charged with two counts aggravated murder with

---

[1] Wet typically refers to a marijuana cigarette dipped in PCP or formaldehyde.

firearm and death penalty specifications. He was also charged with one count of attempted aggravated murder and aggravated robbery, each with firearm specifications. Price later pleaded guilty to one count of involuntary manslaughter and one count of aggravated robbery in exchange for his testimony at Buehner's trial.

{¶10} Price testified that he drove Buehner's black pickup truck on the night of May 24, 2001 to buy some "wet." Before buying the drugs, they stopped and picked up a black man, who gave Price directions to Marah Avenue. Price testified that the black man, whom Price had never seen before, entered the passenger side of the van and sat next to Buehner, who sat in the middle seat next to Price.

{¶11} Price testified that they met two black men, later identified as Edwards and Saunders, who were selling drugs on Marah Avenue. The unidentified black man exited the truck to allow Buehner to deal directly with Saunders. Meanwhile, Edwards stood a short distance from the driver's side of the truck. Price testified that as he was talking to Edwards, he heard someone say: "He's got a gun." Price explained:

A: When I looked, I seen fire from the gun.

\* \* \*

Q: Where was the gun?

A: In Mike's hand.

Q: Can you describe the gun?

A: Black nine millimeter handgun.

Q: When you saw the gun in Mike's hand, where was Mike at the time?

A: Like halfway behind the door, you know, holding on to the door and shooting. (Tr. 594.)

{¶12} According to Price, after Saunders fell to the ground, Buehner walked over to him, touched him, and stated: "I killed him Randy, I think I killed him." (Tr. 598-599.) After the shooting, when Price and Buehner had returned the truck to Buehner's garage, Buehner told Price that he shot Saunders because Saunders sold him $450.00 of fake "wet" earlier that day. (Tr. 604.) Buehner also cleaned the truck and sold the gun used in the shooting. (Tr. 623.) Price, Buehner, and Buehner's girlfriend, Jeanie, went to Price's camper in Deerfield, Ohio the day after the shooting. (Tr. 615.) In later discussions, Buehner told Price not to worry about getting caught because there were no license plates on the truck at the time of the shooting.

{¶13} Buehner, through counsel, made several pretrial discovery requests, including requests for any exculpatory evidence. In its response, the state identified 15 nonpolice witnesses by name and address, including Debbie Anderson, Gail Jenkins, Antoine Edwards, and Tierra Edwards. The state also indicated in response to discovery that "[n]o exculpatory material [wa]s available to or in the possession of the Prosecuting Attorney." Nevertheless, after receiving the state's discovery responses, Buehner's trial counsel filed two motions requesting production of any "statements of all persons who were observed to have been near, in, or made observations with respect to persons who were near 9520 Marah Avenue, Cleveland, Ohio on 24 May 2001 including but not

limited to * * * Debbie Anderson * * * Gail Jenkins, * * * Tierra Edwards * * * [and] Antoine Edwards." Buehner maintains the state never produced statements from any of these witnesses despite this request.

{¶14} Buehner only called one defense witness at trial. His grandmother, Victoria Thomas, testified that Buehner was sleeping in her home on East 123rd Street in Cleveland at the time Saunders was shot and killed. Although two jurors were initially hesitant to accept Edwards and Price's testimony as true, the jury ultimately found Buehner guilty of two counts of murder with firearm specifications and one count of attempted murder.[2] The court merged the two murder convictions and sentenced Buehner to 18 years to life in prison.

{¶15} In the spring of 2014, a family friend of Buehner made a public records request to the Cleveland Police Department concerning any and all police reports related to the Saunders homicide investigation. The Cleveland Police Department produced over 30 reports in response to the request, including a report detailing the eyewitness account of Debbie Anderson. This report, dated September 27, 2001, summarizes the police interview of Anderson, who described the shooter as "light complexed [sic], hair in braided hairstyle, slim build, 5'10", in mid 20s."

---

[2] This court reversed the attempted murder conviction due to insufficient evidence. *See State v. Buehner*, 8th Dist. Cuyahoga No. 81722, 2003-Ohio-3348, ¶ 29.

**{¶16}** The reports also included previously undisclosed witness statements of Tierra Edwards, Antoine Edwards, and Gail Jenkins.  In Tierra Edwards's statement, she described the driver of the truck as white and one of the passengers as black, but she told police she "did not get a good look at the middle passenger in the truck."  Gail Jenkins reported that she saw three suspects: a white driver of the truck and two black passengers.  Antoine Edwards told police that he left the scene shortly before the shooting and thus did not provide any details regarding the suspects.

**{¶17}** After receiving the police records, Buehner, pro se and through two different attorneys, filed several motions for leave to file a motion for a new trial and for postconviction relief, arguing his constitutional right to due process was violated by the state's failure to produce the statements of Debbie Anderson, Gail Jenkins, Tierra Edwards, and Antoine Edwards.  He asserted that Anderson's statement contained exculpatory evidence because Anderson told police that the shooter and the other two individuals in the truck were black whereas Buehner is white.  Buehner also asserted that inconsistencies in the statements of Gail Jenkins, Tierra Edwards, and Antoine Edwards would have cast doubt on the testimony of the witnesses who identified Buehner as the shooter at trial.

**{¶18}** The trial court denied Buehner's motions for leave to file a motion for a new trial and for postconviction relief without a hearing.  In its journal entry denying the motions, the court stated, in relevant part:

Defendant has failed to demonstrate by clear and convincing proof that he was unavoidably prevented from discover[ing] the potential testimony of the witness, Debbie Anderson, as alleged by defendant. Defendant's trial attorneys had knowledge of the existence of the witness and defendant has not provided clear and convincing proof [that] the summary was not provided in discovery, no[r] that the trial attorneys could not have learned of the existence of her statement with reasonable diligence. Likewise the police summary of Ms. Anderson's oral statements is not new evidence because defendant was not unavoidably prevented from discovering the facts relied on in the petition and motion. Furthermore, there is not clear and convincing evidence that defendant would have been found not guilty but for the alleged failure to provide the police summary, and because his petition for postconviction relief is untimely and pursuant to R.C. 2953.23, the court lacks jurisdiction to grant the relief sought.

Buehner now appeals the trial court's judgment.

## I. Law and Analysis

## A. Motion for New Trial

{¶19} In the first three assignments of error, Buehner argues the trial court abused its discretion in denying his motion for leave to file a motion for new trial without holding a hearing when (1) he was unavoidably prevented from discovering the undisclosed witness statements of Debbie Anderson, Tierra Edwards, Antoine Edwards, and Gail Jenkins prior to trial, (2) the state failed to disclose the exculpatory evidence contained in the undisclosed witness statements prior to trial in violation of *Brady*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and (3) he was unavoidably prevented from discovering the undisclosed witness statements within 120 days of his conviction. We discuss these assigned errors together because they are closely related.

{¶20} A trial court's decision on a Crim.R. 33 motion for a new trial will not be reversed absent an abuse of discretion. *State v. Sutton*, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.). We also review the decision on whether to hold a hearing on the motion for new trial for an abuse of discretion. *Id*. at ¶ 24. A trial court abuses its discretion if its decision is unreasonable, arbitrary, or unconscionable. AAAA *Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶21} Crim.R. 33 provides that a motion for new trial based upon newly discovered evidence must be filed within 120 days after the verdict was rendered unless the defendant demonstrates by clear and convincing proof that he was unavoidably prevented from discovering the new evidence within the 120-day period. Crim.R. 33(B). Thus, in order to obtain a new trial based on new evidence more than 120 days after the verdict, a defendant must first file a motion for leave, showing by clear and convincing proof that he was unavoidably prevented from filing the motion within the rule's 120-day limitations period. *State v. Glover*, 2016-Ohio-2833, 64 N.E.3d 442, ¶ 27 (8th Dist.).

{¶22} A party is "unavoidably prevented" from discovering the new evidence if the party had no knowledge of the existence of newly claimed evidence and could not have learned of its existence within the time prescribed by the rule with the exercise of reasonable diligence. *Id*. If the trial court finds that the documents submitted in support of a motion for leave to file a motion for new trial clearly and convincingly demonstrate that the defendant was unavoidably prevented from discovering the evidence, "'the court

must grant the motion for leave and allow the motion for new trial to be filed.'"  *Id*. at ¶ 28, quoting *State v. Trimble*, 2015-Ohio-942, 30 N.E.3d 222, ¶ 16 (11th Dist.).

**{¶23}** Buehner argues he was unavoidably prevented from discovering the existence and content of the police report containing Anderson's statement because the state indicated in response to discovery requests that "[n]o exculpatory material [wa]s available to or in the possession of the prosecuting attorney."  The state, on the other hand, argues that Anderson's statement is not "newly discovered evidence" because the state identified Anderson as a witness in its witness list, and Buehner's trial counsel could have interviewed Anderson in preparation for trial.  The state also identified Gail Jenkins, Tierra Edwards, and Antoine Edwards on its witness list.

**{¶24}** However, after receiving the state's discovery responses, Buehner's trial counsel filed a motion specifically requesting "the statements of all persons who were observed to have been near, in, or made observations with respect to persons who were near 9520 Marah Avenue, Cleveland, Ohio on 24 May, 2001, including but not limited to * * * Debbie Anderson * * * Gail Jenkins, * * * Tierra Edwards * * * [and] Antoine Edwards."  Despite this specific request for statements from these witnesses, the state failed to produce any statements and indicated that no such statements existed.

**{¶25}** The state nevertheless contends that Buehner could have made the public records request within the 120-day period prescribed by Crim.R. 33(B), and that Buehner has offered no explanation as to why he waited almost 12 years after his conviction to request this information.  We think the explanation is obvious; the state informed

Buehner's trial counsel that no exculpatory statements from Anderson or any of the identified witnesses existed at the time of trial. Buehner would have had no reason to believe that a request for exculpatory evidence made within 120 days after the verdict would produce a different result from the very same request made prior to trial, particularly since the state was required to produce the requested evidence before trial under Crim.R. 16.[3]

{¶26} Exculpatory evidence is evidence that would tend to exculpate a defendant of guilt or reduce a defendant's penalty. *Glover*, 2016-Ohio-2833, 64 N.E.3d 442, at ¶ 41. Anderson told police that the shooter and the other two individuals in the truck were black whereas Buehner is white. If believed, Anderson's statement suggests that someone other than Buehner murdered Saunders.

{¶27} Additionally, Gail Jenkins told police that although the driver of the truck was white, the other two passengers were black, including the middle passenger. Had Gail Jenkins testified at trial, her testimony would have contradicted Price's and Edwards's testimony to the extent that they claimed there were two white perpetrators and one black perpetrator in the black truck. Therefore, at the very least, Anderson and

---

[3] Crim.R. 16, in effect at the time of trial, required the prosecuting attorney to disclose "evidence favorable to the defendant" upon the defendant's motion. Crim.R. 16(B)(1)(f) further stated:

> Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment.

Jenkins's statements constituted exculpatory evidence that should have been produced in pretrial discovery.

{¶28} The state asserts there was no evidence that the prosecutor had Anderson's, Jenkins's, or any other undisclosed statements in its possession prior to trial. Indeed, the prosecutor stated on the record on the first day of trial that he was cognizant of defense counsel's requests for exculpatory evidence and of the state's continuing duty to provide exculpatory information to the defense, but that "there was nothing to give them." (Tr. 19.) The record indicates that the state provided full discovery responses to Buehner's requests based on the evidence in the state's possession, and that the undisclosed witness statements remained in the possession of the Cleveland Police Department. Therefore, there is no evidence that the state intentionally withheld exculpatory evidence from the defense.

{¶29} However, the Cleveland Police Department's knowledge is imputed to the state. *State v. Wiles*, 59 Ohio St.3d 71, 78, 571 N.E.2d 97 (1991) ("Inasmuch as the police are a part of the state and prosecutional machinery, * * * such knowledge on the part of a law enforcement officer must be imputed to the state."). Therefore, even if Anderson and the other witnesses' statements were never turned over to the prosecutor's office, the state was not relieved of its obligation to disclose them.

{¶30} Buehner had no knowledge of the exculpatory information contained in the undisclosed police reports. Nor did he have any reason to believe that the police reports contained improperly suppressed exculpatory evidence because the state represented that

no exculpatory evidence existed.  Therefore, although Buehner's motion for new trial was untimely, his motion for leave to file a motion for new trial and the supporting documents clearly and convincingly demonstrate that Buehner was avoidably prevented from discovering the exculpatory evidence.  Therefore, the trial court erred in denying Buehner's motion for leave to file a motion for new trial.

**{¶31}** The first, second, and third assignments of error are sustained.

**{¶32}** The trial court's judgment is reversed and the case is remanded to the trial court to consider Buehner's motion for a new trial and whether the newly discovered evidence is material under *Brady*, 373 U.S. 83, 97, 83 S.Ct. 1194, 10 L.Ed.2d 215.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR